JAMES SAWYER, Sheriff of Chittenden County,
Appellant,
*against*
JONATHAN HOYT and SILAS HATHAWAY,
Appellees.

In an issue to the Jury, whether a discharge, release or receipt be fraudulently obtained or not, an estoppel cannot be urged to the exclusion of testimony showing the fraud, as the Court will not notice an estoppel unless relied on in the pleadings.

DEBT on a gaol bond executed to the plaintiff for the liberties of the prison.

The plaintiff demanded 200 dollars, and declared on the penal part of a bail-bond executed by the defendants jointly and severally with *Levi Allen*, dated 31st of *July*, 1798.

The defendants prayed *oyer* of the bond and condition, which was read. It appeared that the defendants had executed the bond jointly and severally

as sureties for *Levi Allen*, then a prisoner in *Chitten-den* County gaol, who had been committed on a writ of execution, dated the 16th of *June*, 1798, which had issued upon a judgment rendered by the Supreme Court of Judicature, *June* adjourned term, 1798, in favour of *Thomas Sandford*, *William Kindall*, *Daniel Warner*, *Elijah Pratt*, and *Aaron Adams*, for the sum of 114 dols. 57 cts. costs, recovered in an unsuccessful suit brought by *Allen*, conditioned in the usual form, that *Allen* should not depart the liberties, unless, &c. and save the sheriff harmless.

The defendants pleaded in bar, confessing the judgment, writ of execution, commitment, and execution of the bond. They say, that the plaintiff from having and maintaining his action against them ought to be barred; because they say, that long before the commitment of *Levi Allen* to prison, as set forth in the condition of the bond, to wit, on the 27th of *June*, 1798, at *Weybridge*, in *Addison* County, *Thomas Sandford*, one of the creditors in said judgment, for himself and the other privies to said judgment, for a valuable consideration therein expressed by his memorandum in writing under his hand, commonly called a release, receipt, or discharge, which the defendants have here ready in Court to be produced, released and discharged the said *Levi Allen* from said judgment, *et hoc parati sunt verificare;* and then, after the usual averments, prayed judgment, and for their costs.

The plaintiff craved *oyer* of the memorandum, which was read to him in the words and figures following, to wit:

Know all men by these presents, that I, *Thomas Sandford*, of *Weybridge*, in the County of *Addison*, in consideration of one dollar received of *Levi Allen*, do exonerate and discharge the said *Levi Allen* from all notes, book-debts, bonds, bills, judgments of Court, executions, extents, quarrels and controversies, or matters now depending in law or equity or otherwise, for or by reason of any transaction that hath taken place between the said *Levi* and said *Thomas Sandford*, or between the said *Levi* and said *Thomas Sandford*, *William Kindall*, *Daniel Warner*, *Elijah Pratt*, and *Aaron Adams*, to this date, being the 27th of *January*, 1798.

his

*Thomas* ✕ *Sandford*.

mark.

And the plaintiff protesting that *Thomas Sandford* was not interested in the judgment obtained in his name with *Kindall* and others, who had formerly been partners in the contract for the non-fulfilment of which *Allen* had prosecuted them jointly, and they had recovered their costs, which costs were contained in the writ of execution upon which *Allen* had been committed, but had long before the suit been discharged from all interest in the partnership, and had been in no ways concerned in defending the suit, but was merely a nominal party therein. For replication to the defendants' plea in bar, he says, that he ought not to be barred, because he says, that the said receipt, release or discharge, proferted in the defendants' plea in bar, was fraudulently, surreptitiously, and by covin, obtained from said *Sandford* by said *Allen*, he the said *Sandford* being an illiterate man, not having had the benefit of an education

within this State, and wholly incapable of reading writing. Wherefore, &c.

The defendants, protesting that *Sandford* was and is interested in the judgment obtained by him with *William Kindall* and the others, and in the writ of execution upon which *Levi Allen* was committed, &c. rejoin and say, that the plaintiff from having and maintaining his action against them ought to be barred, for that said receipt, release, or discharge was not obtained surreptitiously, fraudulently and by covin, from said *Sandford* by said *Levi Allen* in manner and form as the plaintiff in his replication hath alleged, and this they pray may be inquired of by the country.

And the plaintiff doth the like.

A Jury was empannelled to try this issue.

In support of his replication, the plaintiff offered to show the fraud in *Allen* in obtaining the discharge.

To such showing,

*Marsh,* for the defendants, objected, and insisted, that the plaintiff standing in the shoes of the original creditors, *Sandford, Kindall,* and others, and bringing this action for their eventual benefit, was *estopped* to deny the discharge of any one of them.

*Sed per Curiam.* The issue carved by the parties is, whether the discharge was fraudulently obtained or not; and this is the sole question to the Jury. If the defendants had inclined to rest their defence on this point of law, they should have demurred to the plaintiff's replication: but since they have elected to

traverse the fraud to the country, to show the fraud in *Allen* in obtaining the discharge, must be considered pertinent to the issue.

*Co. Litt.* 305.

Estoppels are said to be odious in law. The doctrine of estoppels is one of those hard but perhaps necessary precepts of the law, where, for the acquirement of a general good, particular injury is often suffered to be inflicted. It was introduced originally to prevent chicanery, but it has sometimes been made the sanction of fraud. The Court certainly will not be inclined to apply it in cases of an alleged fraud, where the pleadings do not render it absolutely necessary. It has been decided in the parent country, that estoppels cannot be taken notice of unless relied *2 Mod.* 37. on in pleading; and so this Court have ever considered.

Let the evidence be admitted.

The facts which appeared in evidence were, That *Sandford* was an illiterate man. That on the 27th of *June*, a few days after the judgment had been obtained, *Allen* sent for him by a *special agent* to come and settle with him. That *Sandford* came; but at this time he knew that there had been an action pending in the Supreme Court in favour of *Allen*, against himself, *Kindall* and the others, but imagined that the action had been discontinued. *Allen* informed him that it had been called out of Court, and the parties both considered that it had been in their whole conversation. *Allen* proposed to pass receipts; and wrote two, each for the consideration of one dollar, and each similar in language, as applicable to a mutual discharge. These receipts were read correctly and audibly in the hearing of *Sandford*. *Allen* then signed

one of the receipts, and pushing it on the table to-wards *Sandford*, requested him to sign it. *Sand-ford*, hesitating, said, " If I thought there was no trick in it, I would sign it ; for I owe you nothing, and you owe me nothing." *Allen* appearing to be of-fended, said, " Sir, do you doubt my honour? This is the first time my honour was ever called in ques-tion by nobility or gentry in *Europe* or *America*." *Sandford* then signed the receipt, and delivered the receipt to *Allen*.

The Jury returned a verdict for the plaintiff.

The defendants entered a review, and at the *Ja-nuary* term, 1804, were defaulted by order of Court for neglect in advancing fees.

*Samuel Miller*, *Daniel Chipman*, *Elnathan Keyes*, and *Josias Smith*, for the plaintiff.

*William C. Harrington* and *Amos Marsh*, for de-fendants.