NATHAN LORD, President of Moore's Charity School,      CALEDONIA,
                                    *March,*
                      *vs.*                           1836.

SAMUEL BIGELOW, *et al.*

A plaintiff, who sues as a corporation, is bound to shew his corporate character, if required.

An act of the legislature, reciting a former statute, is evidence of the former statute.

A grant from the legislature, either to individuals or to a foreign corporation, gives them a capacity to take and hold the thing granted.

A tenant is estopped from denying the title of his landlord, in an action of ejectment brought by the landlord.

Such estoppel may be given in evidence on trial of the general issue, plead by the tenant.

This was an action of ejectment for certain lands in the township of Wheelock, described in plaintiff's declaration. *Plea*—the general issue, and also a plea in bar that there was no such corporation as plaintiffs claim to be. Upon both which pleas, issues were joined to the country.

The plaintiff offered to support the issues on his part by the testimony of Mills Olcott, Esq., to whose testimony the defendants objected; but Mr. Olcott testifying that he is the Secretary of the Board of Trust of Dartmouth College, and has the custody of the records, which were produced in court, and further that there is not in his possession or knowledge any records of Moore's Charity School, the testimony was admitted.

CALEDONIA,
*March,*
1836.

Lord
*vs*
Bigelow et al.

Mr. Olcott testified, that fifty-one or fifty-two years ago, a school was in operation at Hanover, New-Hampshire, called Moore's Charity School; at which time Doctor John Wheelock, President of Dartmouth College, was at the head of said school as "President of Moore's Charity School," and had charge of the funds of the school, and continued in the office until removed from the office of President of Dartmouth College. Dr. Wheelock was succeeded as President of Dartmouth College by Drs. Brown, Dana, Tyler, and Nathan Lord, the plaintiff, in the order of time named. He has no certain knowledge that each of the presidents named, exercised the office of President of Moore's Charity School; but the school has been kept up until within three or four years last past, when it was discontinued for want of funds. It had always been understood that the charge and control of said school had been exercised by the President of said College, except that sometimes the Trustees of said College had given advice upon the subject to the President. He has never known of any officers or board of trust of said school except the President.

The entries of the former Treasurer of Dartmouth College, (Professor Chamberlin, since deceased,) in the corporation books pertaining to the treasury office, by which it appeared he had acted as agent for collecting the rents in Wheelock upon the land claimed by Moore's Charity School, were verified by this witness, by which it appeared he had kept the returns from these lands separate from the funds of the College. President Tyler and Doctor Lord, the plaintiff, did exercise and control the funds of Moore's Charity School, and had the charge and direction of the school up to the time it was stopped, as above named.

The plaintiff then offered in evidence an act of the legislature of this state, passed Nov. 5, 1808, purporting to be a *confirmatory* grant of lands in Wheelock, made to Dartmouth College and President of Moore's Charity School. To the admission of this act, the defendants objected, and insisted that the original grant, if there was one, as was pre-supposed by the act in question, and insisted by the plaintiff, should be produced; but the court decided otherwise, and admitted said act in evidence.

The plaintiff, in further support of the issues, offered in evidence a lease of the land in question, from John Wheelock, President of Dartmouth College and Moore's Charity School, to Samuel Ward, dated September 10th, 1794;—to the admission of which, the defendants objected; but the court overruled said objection, and suffered the lease to go to the jury as evidence in the case, but not as an estoppel in law.

CALEDONIA,
*March,*
1836.
Lord
*vs.*
Bigelow et al.

The plaintiff then offered in evidence the following deeds, to wit:

A deed from Samuel Ward to A. Porter, of said lot No. 77, dated October 18th, 1800.

A deed from said Porter to defendant, Smith, of the west half of lots No. 77 and 78, dated September 23d, 1813, recorded in January, 1830.

A deed from Porter to E. Bigelow of the east half of lots No. 77 and 78, dated January 5th, 1810.

A deed from said Bigelow to Rufus and defendant Bigelow, of said east half of lots No. 77 and 78, dated April 14th, 1820.

A deed from Rufus Bigelow to defendant Bigelow, of the east half of said lots, dated June 27th, 1829.

To the admission of which said deeds, the defendants objected; but the objection was overruled, and the deeds admitted.

It was also proved, that some five or six years since, both defendants, Smith and Bigelow, paid rent to Professor Chamberlin, who was the Treasurer of Dartmouth College. It was proved that defendants were in possession of the land described in plaintiff's declaration, under the deeds aforesaid, at the commencement of this suit, and the plaintiff had notified his readiness to receive rent according to the conditions of the lease, and defendants had refused to pay the same.

No other evidence than that above detailed was given tending to shew the existence of the plaintiff as a corporation.

The defendants contended, and requested the court to charge the jury, that there was not sufficient evidence to authorize the plaintiff to recover, and that the existence of the plaintiff as a corporation was not sufficiently proved to support the issue for the plaintiff, taken on the plea of *nul tiel* corporation, and that the verdict should be for the defendants. But the court ruled otherwise, and directed the jury, if they believed all the evidence on the part of plaintiff, they might return a verdict for the plaintiff against all the defendants. A verdict was accordingly returned for the plaintiff against said defendants.

To the decision of the court in admitting said parol evidence, said lease, act of legislature, and the said several deeds, and to the right of the court to charge the jury as above requested, and the direction given to jury as aforesaid, the defendants except.

Exceptions allowed, and cause passed to supreme court for revision.

There was also a motion in arrest filed by the defendants.

*Upham for defendants.*—In the court below, the defendants

CALEDONIA,
*March*,
1836.

Lord
*vs.*
Bigelow et al.

pleaded, first, The general issue—second, In bar that Nathan Lord was not capable of suing and maintaining the action in his own name, as successor of John Wheelock.—3 *Nul Tiel Corporation.*

The plaintiff joined issue to the country on the general issue, and traversed the two other pleas, and the issues were joined to the country.——We insist,

1. That the testimony of Mills Olcott, Esq. was improperly admitted in the court below. It had no tendency to support the issue on the part of the plaintiff. The existence, in point of fact, of a school at Hanover, fifty-one or two years ago, called " Moore's Charity School," was of no importance in the case. It had no tendency to show the plaintiff's right to sustain his action, and consequently should have been excluded. It was not competent for the plaintiff to prove himself a corporation with power to maintain this action by parol. He should have produced a copy of his act of incorporation, duly authenticated.—Angell and Ames on Corporations, 378, 379, 380—*Gospel Society* vs. *Young*, 2 N. H. Rep. 310—*Bank of Michigan* vs. *Williams*, 5 Wend. 479—*Wood* vs. *Jefferson Co. Bank*, 9 Cow. 194—*Utica Insurance Co.* vs. *Tillman*, 1 Wend. 558.

Neither was it competent to prove by parol that the plaintiff was President of Dartmouth College.

2. The records of Dartmouth College should have been excluded as improper evidence in the case.—1 Stark. Ev. 297, 298, 299, n. 1—*Loudon* vs. *Lynn*, 1 H. Black. R. 214, n. a—*Commonwealth* vs. *Woolper*, 3 Serg. & Raule, 29—*Jackson* vs. *Walsh*, 3 John. R. 226.

3. The act of the legislature of this state, passed November 5, 1808, entitled, " an act confirming the grant of the township of Wheelock to the Trustees of Dartmouth College, and the President of Moore's Charity School," was improperly admitted as evidence in the case, to support the issue on the part of the plaintiff.

This act, we insist, could not be made admissible evidence in the case, without first producing the original grant of 1785. The act produced by the plaintiff, and admitted in evidence in the court below, contains only one short section, asd is in the following words, viz :—

" Sec. 1. *It is hereby enacted by the General Assembly of the* " *State of Vermont, and declared,* That the said school, whether " known and called by the name of Moore's Charity School, or

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

"Moore's Indian Charity School, and the President thereof of right, "had and has a legal capacity of taking, holding, and enjoying said "granted premises, according to the tenor, true intent and mean- "ing of said grant; and the said grant of the township of Whee- "lock is hereby ratified and confirmed to the said School, and the "said President thereof, and his successors, and to the Trustees of "said Dartmouth College, with all the uses therein contained, ac- "cording to the tenor, true intent and meaning thereof."

I am aware that there is a long preamble to this act; but that is no part of the law.—See *Coleham* vs. *Cook*, Willes' Rep. 395. —*The King* vs. *Williams*, Black. Rep. 95.

This court cannot decide upon the true intent and meaning of the grant of 1785, without seeing it and giving it a careful examination. Lay the original grant out of the question, and the confirmatory act is of no importance: It is perfectly nugatory.

But if the act of 1808 amounts to a grant of the township of Wheelock, it will not help the plaintiff, because it is not granted to him or any corporation which he represents. The grant of 1785 is "ratified and confirmed to the said School and the said President thereof, and his successors, and the Trustees of Dartmouth College."

But again, if the act of 1808 amounted to a grant, it was void for the want of a competent grantee to take the estate granted.— There can be no valid grant without a competent grantor and grantee, and a thing to be granted: And one thing more is necessary; the thing granted must be accepted by the grantee.—4 Comyn's Dig. (A. 1,) 537.

It is said in Viner's Abr. 8 vol. 56, (H) "If a man devises *to the Priests of a Charity or of a College* in the Church of A., and dies, and at this time there is not any *Charity* or *College*, the devise is void, and shall not have any effect, though a Charity or College be afterwards made there."

So a devise made in remainder to a corporation, where there is no such, is void, though there be such a corporation made before the remainder fall.—8 Vin. Abr. 56, (H.)

In Chan. Cas. 134, it was decided that a bequest to the Parish of *Great-Creaton* was void because that parish was not incorporated.

In *Collison's* case, (Hob. 136,) the will made John Buett and others "feoffers of a home, to keep it in reparation, and bestow the rest of the profits on reparation of certain highways," and the

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

devise was held utterly void.—*Woodman* vs. *Woodruff*, Amb.
636.

In the case of *Maurice* vs. *The Bishop of Durham*, (9 Vesey
399,) the devise was to the Bishop in trust, to dispose of the resi-
due to such objects of benevolence and liberality as he, in his dis-
cretion, should most approve ; and it was determined that the be-
quest was void.

A grant to a person not *in esse* at the time of the grant, is void.
—4 Comyn's Dig. Tit. Grant, (B. 1,) 538—*Sloan* vs. *McLon-
ahy*, Ohio Cond. R. 761.

A grant to the parishioners or inhabitants of Dale, or to the com-
moners of a certain waste, and all such-like grants, are utterly
void.—Coke's Lit. 3 a.—Shep. Touch. 235.

So a devise to the inhabitants of Roxford, living within the north-
west parish, is void.—*Barker* vs. *Wood*, 9 Mass. R. 419.

So a grant to the people of Otsego County is void.—*Jackson* vs.
*Cory*, 8 John. R. 385, 388.

A grant to a town not incorporated, is also void.—*Hornbeck* vs.
*Westbrook*, 9 John. R. 73.

In *Green* vs. *Dennis*, (6 Conn. R. 293,) a devise in the words
following was held void for the want of an act of incorporation :—
"I give to the *Yearly Meeting* of the people called *Quakers*, of
New-England, my farm in Pomfret, that I bought of Clark and
Nightingale, the net income of which to be appropriated in aid of
the charitable fund of the boarding-school established by *Friends*
in *Providence*, to them the said people called *Quakers*, and their
successors of the same faith forever."

In the *Baptist Association* vs. *Hart's Executor*, 4 Wheaton, 1,
(in 4 Cond. R. 373,) a devise to the *Baptist Association that for
ordinary meets in Philadelphia annually*, as trustees of certain
military certificates, to constitute a perpetual fund for the education
of youth of the Baptist denomination, who shall appear promising
for the ministry, was held void, because the association was not in-
corporated at the testator's decease, and could not take the trust
as a society.

If the doctrine of the cases cited is sound, how can the act of 1808
be considered a valid and operative grant of any portion of the
townshhip of Wheelock to Moore's Charity School, or to John
Wheelock, as president of said school, and his successors in office ?
It is not pretended that the school was incorporated at the time of
the original grant, and there is no evidence in the case showing
that it has been since.   Indeed, a subsequent incorporation would

not help the case.—*Baptist Association* vs. *Hart*, 4 Wheaton, 1.

Doctor Wheelock it seems, by the preamble to his act of 1808, doubted whether his school had a legal capacity to take and hold the lands in question by virtue of the grant of 1785. If the grant of 1785, so far as it related to Moore's Charity School, was void for the want of a competent* grantee, of what avail was it for the Doctor to procure the same legislature to declare by a subsequent act, that the school had a legal capacity to take and hold the lands ? Surely, such an act could not better the condition of Doct. Wheelock or his school. He could have remedied the evil only in one way, and that was, to have got his school incorporated by the legislature of New-Hampshire, and then applied to the legislature of this state for a grant of the lands to his school, by its corporate name. But never having procured an act of incorporation for his school, the question now arises, was there any school capable of taking and holding real estate under the grant of 1808? (if that act can be called a grant.) This question must certainly be answered in the negative.

The case of *Fuller's Ex'r* vs. *Griffin*, (3 Vt. R. 400,) shows that a church or society that has no legal incorporation, cannot hold real estate under a will ; and still less can persons in the name of office derived from such church or society, hold such real estate. It is clear then that Doct. Wheelock, and after him his successor as president of the school, could not take and hold the real estate in question, for the use of the school.

I am aware that there is a large class of cases in the English Chancery, founded upon the 43d of Eliz., showing that charitable bequests will be carried into effect, however vague and uncertain they may be. And if the objects of the charity are not designated with sufficient certainty in the testator's will, the court will supply the defect. But this class of cases can have no application to this case, if relied upon by the plaintiff : 1st, Because the 43d of Eliz. is not in force here : and, 2d, Because this is a suit at law, and the plaintiff must make out a legal title to the lands sued for, or he cannot recover.

4. The lease of the lands in question from Doct. John Wheelock to Samuel Ward, dated September 10th, 1794, was improperly admitted as evidence in the case. This lease had no tendency to show title to the lands in question in the plaintiff. If the suit were in the name of John Wheelock, executor, the lease might be proper evidence in the case ; but the present plaintiff, I insist, cannot maintain an action of ejectment founded upon this lease.—

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

CALEDONIA,
*March,*
1836.

Lord
*vs.*
Bigelow et al.

If I am correct in my views of the law as to the lease, then all the copies of deeds which were admitted as evidence in the case to support the issue on the part of the plaintiff, should have been excluded. If the plaintiff intended the lease from Doct. Wheelock to Ward as an estoppel, he should have pleaded it as such.—1 Chit. Pl. 548—11 Co. 82, a·—Hob. 206, 207—2 Ld. Raym. 1052, 1054, 1550—1 Salk. 267—1 Saund. 325, n. 4—2 Str. 817—2 Barn. & Ald. 662—3 East. R. 346—Willes R. 9—Story's Pl. 47.

5. Whatever view the court may take of the act of 1808, we think it perfectly clear that the plaintiff cannot maintain this action in his own name, as successor in office to John Wheelock, late President of Dartmouth College.

Doctor Wheelock, it is true, on the 10th of September, 1794, made a lease of [the lands in question to Samuel Ward; but the case does not show that Ward took possession of the land under the lease, or that he ever paid Doct. Wheelock or any other person rent for the land. In the lease, Doct. Wheelock styled himself " President of Moore's Charity School," and made and executed the lease " in behalf of himself as President, and of his successors to that office." Ward covenanted in and by said lease to pay the rent for said land "to the said Wheelock, his successors, or such person or persons as he or they shall appoint to receive the same."

The plaintiff makes this lease the foundation of his action, and claims to recover, as the successor of Doct. Wheelock, in the office of President of the school.

The school not being incorporated, Doct. Wheelock, we maintain, could have no successor in the office of President of the school, who could maintain an action founded on this lease, or who would be known or recognized in law as his successor, for any purpose whatever.—6 Vin. Abr. (Tit. Corp. G. 6,) 275.

It is a well-settled principle of the law, that an obligation to an officer and his successor in office, does not enable the successor to sue in his own name, without a statute for that purpose.—2 Com. Dig. 263 (C.)—*Dana et al.* vs. *Gridley et al.* 1 New. R. 34— 8 Dane's Abr. 511, 571—*Sumner* vs. *Stuart,* 2 N. H. R. 39— *Whitelaw* vs. ———, 1 D. Chip. R. 29*t* —Dyer's Rep. 48, a. —Kyd on Corp. 31.

6. It appears from the bill of exceptions, that the defendants, Smith and Bigelow, some five or six years ago, paid rent for the lands to Professor Chamberlin, who was Treasurer of Dartmouth

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

College. This fact, however, will not in my apprehension, help the plaintiff. If the Trustees of Dartmouth College, who are a corporation capable of holding land, had brought the suit, and found on trial, that the defendants were in possession under them, or had admitted their title by paying them rent for the land, a question of more difficulty would be presented for the decision of the court.— But even in that case, though the defendants would not be allowed to dispute the plaintiff's title, they might in my humble opinion, plead in bar *nul tiel corporation,* and compel the plaintiffs to prove themselves a corporation. It does not follow of course, because an unincorporated society put a man into possession of land belonging to the society, that they can eject him in the name of the society.—(12 John. R. 401.) In such case, the action must be bro't in the name of the individuals composing the society. A married woman may own land and put a tenant in possession of it ; but she cannot eject him in her own name. If any suit can be maintained for the lands in question, by virtue of the act of 1808, the Trustees of Dartmouth College should bring it.

7. It appears from the bill of exceptions, that the counsel for the defendants insisted that under the pleadings in the case, the plaintiff was bound to prove himself a corporation, with power to sue, &c. ; and requested the court so to instruct the jury. The court was also requested to instruct the jury " that the existence of the plaintiff as a corporation was not sufficiently proved to support the issue for the plaintiff, taken on the plea of *nul tiel corporation.* The court, as the bill of exceptions shows, refused to give the required instruction to the jury, and the defendants excepted. The question now arises, was the exception well taken ? The court will perceive by looking at the declaration, that the plaintiff claims to recover the lands in question, in his corporate capacity, as successor in office of John Wheelock. The defendants' plea in bar denies this corporate capacity set forth in the declaration, and the plaintiff has taken issue upon it. Now let me ask, was it not necessary for the plaintiff to prove his corporate capacity, and show himself a corporation ? We insist that it was ; and rely upon the following authorities, viz : Hob. 21—2 Ld. Ray. 1535—1 Kyd on Corp. 292, 293, 284—Angell & Ames on Corp. 377—*Peters* vs. *Mills,* Bull. N. P. 107—*Jackson* vs. *Trustees of Union Academy,* 8 John. R. 378—*Dutchess Manufac. Co.* vs. *Davis,* 14 John. R. 238—*Bank of Auburn* vs. *Weed,* 19 John. R. 300— *Ernest* vs. *Bartle,* 1 John. Cas. 319—*Bile* vs. *Fourth Western Turn. Co.* 14 John. R. 416—*Central Manufac. Co.* vs. *Harts-*

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.
horne, 3 Conn. R. 119—*Gospel Society* vs. *Young,* 2 N. H. R. 310—*Bank of Michigan* vs. *Williams,* 5 Wend. 478—*Wood* vs. *Jefferson Co. Bank,* 9 Cow. 194—*Utica Ins. Co.* vs. *Tillman,* 9 Wend. 555—Angell & Ames on Corp. 380, 381—*Green* vs. *Dennis,* 6 Conn. R. 293—*Lumbard* vs. *Aldrich,* 6 N. H. R. 269—*Boston Type Foundry* vs. *Spooner,* 5 Vt. R. 93, and cases there cited by counsel and judge.—*Propagation Society* vs. *Clark et al.* 3 Pet. R. 408—1 Saund. 340.

The above authorities show most conclusively, 1st, That the plaintiff was bound to prove himself a corporation, and, 2d, That he could not do it by parol. He should have produced a well authenticated copy of his act of incorporation.

On looking over the bill of exceptions, the court will discover that there was no evidence in the case, tending to show that the plaintiff was a corporation. Upon what ground, then, did the hon. judge, in the court below, tell the jury that if they believed the evidence, they *might* return a verdict for the plaintiff?

Lastly : The motion in arrest was filed for the purpose of testing the validity of the plaintiff's declaration. He claims, in his declaration, to recover as the successor in office of Doctor Wheelock. If we are correct in our views of the law, as to the right of a successor in office, to sue in his own name, this declaration is clearly bad, and the judgment should be arrested. The declaration should show the plaintiff's right to maintain the action. — *Central Manufac. Co.* vs. *Hartshorne,* 3 Conn. R. 199.

*I. Fletcher for plaintiff.*—Action of ejectment for lands in the town of Wheelock. *Pleas*—1st, The general issue—2d, *nul tiel corporation,* and issues closed to the jury. By the issues taken, which are in substance but the general issue, it is necessary for the plaintiff to support two propositions : 1st, *His political corporate existence*—2d, *His right to the lands demanded.* All evidence tending to support the affirmative of either of their issues is pertinent and competent to be given in trial on the part of plaintiff.

To support the affirmative of the first proposition, the plaintiff offered the testimony of Mills Olcott, Esq., which was objected to, but admitted.

The plaintiff further offered in evidence the act of the General Assembly of the State of Vermont of November, 1808, as tending to prove that the legislature of this state had recognized the Rev. John Wheelock, President of Dartmouth College, as President of said School, and as a body politic and corporate, capable of taking

and holding the very lands in question for the benefit of said school, and confirming this power in his successors. To the admission of which act, the defendants objected ; which objection was overruled, and the act read in evidence to the jury.

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

The plaintiff offered in evidence a lease from the Rev. John Wheelock, President of Moore's Charity School, to Samuel Ward, of the lands described in the declaration, and copies of deeds duly executed and recorded of a regular chain of conveyance from said Samuel Ward to the defendants, accompanied with proof of the defendants' possession of the premises under said conveyance, of the payment of rents by defendants to the plaintiff up to November, 1830, of rent in arrear at the time of commencing this action, of notice from the plaintiff of his readiness to receive it according to the terms of the lease to said Ward, of defendants' refusal to pay the rent in arrear. To the admission of the aforesaid lease, the defendants objected, contending that the same should have been specially replied by way of estoppel, and could not be given in evidence under the issues taken : Which objection was overruled, and the lease, and the evidence offered with it, passed to the jury.

The plaintiff contends that the testimony of Olcott—the act of the general assembly, and the lease to Ward, accompanied with the testimony offered, was all pertinent and relative to the issues taken, and properly admitted as evidence in the case.

In the absence of all proof of record evidence, it is difficult to see why such evidence is not pertinent and relevant to prove the issue of *nul tiel corporation,* if evidence other than a grant or charter may be given to prove the fact under any circumstances. But other evidence than a grant or charter may be given to prove the existence of a corporation. Books of corporation are competent evidence to be received to prove its existence. These are but proofs of its corporate acts and doings. It is testimony of the corporation's own creating: one would think it much less satisfactory than the testimony of disinterested, credible witnesses.— *Carpenter's Company* vs. *Hayward,* 6 Petersd. 449— *Turnpike Company* vs. *McKean,* 10 John. R. 156.

The length of time corporate privileges have been claimed and exercised, is competent and proper testimony to prove the corporate existence.— *Grimes* vs. *Smith,* Co. R. 345.— *Beadle* vs. *Beards,* Co. R. 345.

In the case *Mayor of Hull* vs. *Homer,* (1 Cowper, 110,) Lord Mansfield said, that though the grant or charter be not produced, nor any proof adduced of its loss, facts and circumstances may be

CALEDONIA,
March,
1836

Lord
vs.
Bigelow et al.

given in evidence to prove the existence of a corporation, and left to the jury for their consideration. This would seem decisive of the whole question upon the admission of evidence. The defendants say that there is no such body politic and corporate as the President of Moore's Charity School. The plaintiff offers evidence tending to prove that there *is* such a school,—that it existed for more than *half a century*,—that it has a President,—that for all that time he has been known and recognized as a body politic and corporate,—that he has exercised all the powers of a corporation,—that he has received and held lands as such—has leased them out, and collected rents, and done all acts that appertain to a corporation. If this does not tend to prove the existence of such corporation, it is very difficult to see what will.

But to entitle the plaintiff to recover in this case, it is not necessary to prove himself a body corporate and politic, *de lege*,—it is sufficient to prove himself so, *de facto*; for the defendants set up no estate in the lands claimed in their own right.—9 Mass. Rep. 507, *Rector of King's Chapel* vs. *Pelham*.

To the admission of the lease to Asa Ward, it was objected that it ought to have been technically plead and relied upon as an estoppel, and could not be given in evidence under the issues taken. It is presumed that this objection will not be insisted upon in argument. If it is, we reply, that there is a marked distinction between an estoppel technically relied upon, and an estoppel given in evidence under an issue formed. If technically pleaded and relied upon, the party pleading prays judgment if his adversary ought to be admitted or received to plead or aver any thing against his own acknowledgements, and here the pleadings end.—1 Chit. 617.

But the party may waive his estoppel, and close the issue. This does not conclude him of giving the matter of estoppel in evidence to the jury, as they may find the matter at large according to the facts, and the court give judgment accordingly.—1 Sark. 302.

But if the party who might have relied on the estoppel waives it, and gives it in evidence, the jury would not be warranted in finding a verdict contrary to the solemn admissions of the party without the strongest evidence of fraud.—1 Stark. 304.

All privies in estate, as vendee, grantee, assignee, &c. are bound by an estoppel.—1 Stark. 305.

All documents to which a person is party or privy, are admissible evidence against him. They operate as an admission on his part, or that of him through whom he claims, that the facts are true.—1 Stark. 301.

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

One who claims under a bond or deed, is as much estopped as the obligee or grantee.—1. Stark. 303.

An admission under seal is conclusive against the obligor, and estops him from asserting or proving the contrary.—1 Stark.

A deed of grant to a corporation is evidence of the existence of the corporation against all claiming under the grant.—*Mayor, Alderman & Co.* vs. *Blamiere*, 6 Petersd. 450.

But a tenant cannot dispute the title of his landlord. The plaintiff gave evidence that the defendants were in possession of the premises under the lease of the Rev. John Wheelock to Samuel Ward, and evidence tending to prove that he was the successor of said Wheelock, and also evidence tending to prove that the defendants had paid him rent as the successor of John Wheelock, up to November, 1830. This would seem to be conclusive.—*Driver* vs. *Lawrence*, Wm. Black. R. 1259.—Adams on Eject. 247.— *Doe* vs. *Samuel*, 5 Esp. R. 174.—2 Bing. 54.—7 Mov. 298, 539.

It then manifestly follows, that if the above authorities be regarded by the court as law, the lease in question was not only competent and pertinent evidence in the case, but as against the defendants conclusive evidence of the existence of such a body politic and corporate as the President of Moore's Charity School, and of the plaintiff's right to recover in this action, provided the jury found the fact that plaintiff was the successor of John Wheelock, and that the defendants have paid him rents for the lands demanded. This disposes of the case as to the testimony.

But the defendants except to the charge, as well as to the admission of the testimony. If the refusal of the court to charge as requested, and the charge of the court as given, was such as the facts in the case called for, the plaintiff contends a new trial will not be granted. The defendants' request was direct and specific. They requested the court to charge, first, that there was not *sufficient* evidence to authorize the plaintiff to recover,—secondly, That the existence of the plaintiff as a corporation, was not *sufficiently* proved.

But the court refused so to charge, and did charge, that if the jury believed the evidence on the part of the plaintiff, they might return a verdict for the plaintiff. The charge of the court was correct. Had they charged as requested, it would have been manifest error.

Of the *sufficiency* of the evidence, the court do not speak : this is *wholly* left to the jury. Upon a motion for a new trial, upon the

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

ground that the judge left it to the jury whether the evidence pro-
duced was *sufficient*, and this was a question whether the existence
of a corporation was *sufficiently* proved, the court said it was
properly left to the jury,—that with the *sufficiency* or *insufficien-
cy* the court had nothing to do : it was a *fact* for the jury.    That
whether there be any evidence, is a question for the judge, wheth-
er the evidence be *sufficient* for the jury.—*Company of Carpen-
ters* vs. *Hayward*, Doug 375.

This settles that branch of the charge where the court refused
to instruct the jury as requested by the defendants.

But the defendants have moved in arrest for the insufficiency of
the declaration.  The defendants have not pointed out the defects :
they can only be conjectured.

The plaintiff has not averred that he was a body politic, and
how and when he was incorporated.

If it be the first, I only say it is a clerical mistake, or that the
whole averment may be treated as surplusage ; or, at most, it is
but a good title defectively stated, which is cured by verdict.

To the second, I reply, that it is sufficient in declaring, to set
forth the corporation by name only.    Such are the precedents—
such the authorities, and such the adjudged cases.—*Henreques* vs.
*Dutch W. I. Co*. Petersd. 447.—14 John. *Dutchess Cotton Co*.
vs. *Davis*, 245.—2 Cow. *Bank of Utica* vs. *Smally*, 378.—19
John. *Bank of Auburn* vs. *Wood*, 300.—2 Ld. Ray. 1535.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The plaintiff sues as President of Moor's
Charity School and successor of John Wheelock ; as a corpora-
tion sole.

As his corporate capacity is denied and is expressly put in issue
by the pleadings, it was incumbent on him to make proof of this
allegation.    It is not important to enquire whether the pleas were
good or not.    There is no doubt that when a corporation com-
mence an action in their corporate name, they must make proof of
the fact if required.

In the supreme court of U. S., it has been decided, that if a
defendant means to insist upon the want of a corporate character
in the plaintiff, it must be insisted on by the plea in abatement or
in bar.    The court in this state has been inclined to adopt that
doctrine, and it was on this ground, that the case of the *Boston
Type and Stereotype Foundary* vs. *Spooner*, was decided.    If

these decisions were correct, the plaintiff was bound to show his

corporate character under the special pleas. If the special pleas were not good and the plaintiff would have been safe in demurring, it must have been on the ground that he was bound to show this fact under she general issue.

In New York, it is decided, that in an action in favor of a corporation, they must show their character under the general issue, and there is an authority in Lord Ray to this effect. If they are thus required under that issue, the plea that there is no such incorporation would be bad ; as any special plea which denies what the plaintiff must show under the general issue, is bad. Hence the court in that state, has decided that such plea is bad. The doctrine adopted in this state is conformable to the latter decision in England and in the supreme court of U. S.

It is however immaterial in this case, as under one plea or the other, the plaintiff was bound to make proof of his corporate character. For this purpose he introduces parol testimony, and the act ot the legislature of this state, passed in 1808. The act of 1808, is in the following words :—

" *Whereas*, a grant has heretofore been made under the author-
" ity of the State of Vermont, and a charter regularly issued un-
" der seal of said State, bearing date the 14th of June A. D.
" 1785, to John Wheelock, President of Moor's Charity School
" and the trustees of Dartmouth College, of a township of land
" by the name of Wheelock, the one moiety thereof to the said
" President, and his successors in office for the sole use and bene-
" fit of said school, and the other moiety thereof to the said trus-
" tees, for the use and benefit of said college, forever ; and where-
" as doubts are entertained, whether said school had a legal capac-
" ity to take said grant, and disputes have thereon arisen ; and
" whereas, also, the said John Wheelock, in behalf of said school
" and college, has by memorial, petitioned this legislature to pass
" an act declaring that the president of said school, for the time
" being, with the advice and consent of the trustees of said col-
" lege, may and shall expend all the avails accruing to said school
" from the said granted premises, agreeably to the true intent of
" said grant.—Therefore,

" SEC. 1. *It is hereby enacted by the General Assembly of the*
" *State of Vermont, and declared,* That the said school, whether
" known and called by the name of Moor's Charity School, or
" Moor's Indian Charity School, and the president thereof, of
" right had and has a legal capacity of taking, holding, and enjoy-
" ing said granted premises, according to the tenor, true intent and
" meaning of said grant, and the said grant of the township of
" Wheelock is hereby ratified and confirmed to the said school, and
" the said president thereof, and his successors, and to the trustees

CALEDONIA,
March,
1836.

Lord
vs
Bigelow et al.

" of said Dartmouth College, with all the uses therein contained
" according to the tenor, true intent and meaning thereof.

" *And it is hereby further enacted,* That the president of said
" school, for the time being, with the advice and consent of the
" trustees of Dartmouth College, and who are hereby declared to
" be trustees of said school and not otherwise, may and shall ex-
" pend all the avails accruing to said school from the said granted
" premises agreeable to the true intent of said grant.

The act itself without the recital in the preamble, and with it,
undoubtedly, gives a corporate character and capacity to sue to the
president of Moor's Charity School and his successors in office,
and whoever is now, or shall be hereafter president of that school,
have a legal capacity to take hold and convey whatever is granted
to them and maintain any actions necessary to protect the proper-
ty granted.   It is insisted that the statute should not have been
admitted in evidence, without producing the grant and charter of
1785.   As it respects those parties, the preamble or recital was ev-
idence of the grant or charter therein mentioned.   No principle is
better established than that the recital of a deed in a subsequent
deed is evidence of the former against a party to the latter, though
it may not be against a stranger or against one who derives title
from the grantor, before the deed which contains the recital.   A
charter from the government reciting that a former charter has
been surrendered, is evidence of that fact.   The confirmation grants,
from the governor of New York, reciting the surrender of the
New Hampshire grants, have always been considered as sufficient
evidence of the surrender.   The legislature of the state of Ver-
mont, the sovereign power, in 1808, passed a declaratory and con-
firming statute, in which they recognize and declare that on the 14
June 1785, a grant was made under the authority of the state, and
a charter issued to John Wheelock, President of Moor's Charity
School, and to the trustees of Dartmouth College, of a township
of land, one moiety thereof to the said president and his [succes-
sors in office.   This is sufficient evidence of that fact as against
the state of Vermont and all persons who claim under the presi-
dent of that school.

A further objection is then raised to this statute, that it was void
for want of a [competent grantee to take, and a variety of cases
have been referred to, which have all been before the court in an-
other case arising on the will of Mr. Burr.

There is no doubt that in every private grant there must be a
person competent to take; a sufficient grantee, or the grant will be
inoperative and void.

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al·

But in a public grant emanating from the same power, who can create a corporation, the very grant or charter creates and gives the competency to take.

Thus the original charter, and beyond all doubt, the statute of 1808 made the president of the Charity School and his successors in office, a corporation capable of taking and enjoying the benefit of the grant.   The objection that this was a foreign corporation, is of no avail; whether it was expedient to make this grant to a foreign corporation, was a question addressed to the legislature.   They undoubtedly could give legal existence to a body of men living without their territorial limits or to a corporation existing in a foreign government.   In this view of the case it is not material to determine whether the evidence of M. Olcott was admissible to prove the existence of a corporation.   The broad position assumed by the counsel for the defendant, that the existence of a corporation, can only be proved by the act or charter of incorporation as a certified copy thereof, cannot be sustained.   A corporation may exist by presumption.   Several instances are mentioned in the case of *Searsbury Turnpike Company* vs. *Cutler*, 6 Vt. R. 315, when the existence of a corporation may be proved by other evidence than the production of the charter.

In further examining this cause, we find that the defendants claimed title by virtue of several *mesne* conveyances from Samuel Ward, and that Samuel Ward's title was a lease for 998 years from Dr. Wheelock as President of Moor's Charity School, as well as of Dartmouth College.

A tenant is estopped from denying his landlord's title.   A person executing a deed is estopped from denying a recital in the deed.   And when a party relying on matter of estoppel has no opportunity of pleading it, he may give it in evidence, and it will have the same effect as if pleaded.   An estoppel arising from the fact of tenancy under a landlord, can only be taken advantage of in an action of ejectment by giving it in evidence.   A landlord commences an action of ejectment;—the defendant pleads *not guilty,* and on trial attempts to set up a title adverse to his landlord;—the landlord has no opportunity of pleading the lease as an estoppel, but must rely upon it as evidence.   The effect of this lease from Dr. Wheelock was to estop Mr. Ward and the defendant, who claims under him, from denying the title of Dr. Wheelock as President of Moore's Charity School, and his successors in that office, to the land in question, if the corporate character was sufficiently estab-

CALEDONIA,
March,
1836.

Lord
vs.
Bigelow et al.

lished; and we have already considered that the grant of 1783 and the act of 1808 established that character.

On this view of the case, we have no hesitation in saying, that the President of Moore's Charity School, for the time being, has a capacity to take the one half of the town of Wheelock, granted in the year 1785 :—that the defendant is estopped from denying the title of the President of said school thereto, and must pay the rent or yield up the possession of the land, and that an action may be maintained against him therefore by the President of the school.

There is another question remaining in this case, which is attended with more difficulty—that is, whether Dr. Lord, the present plaintiff, is the successor of Dr. Wheelock, as President of that school. That he is successor as President of Dartmouth College, is clear. If the act of the legislature of New-Hampshire, passed in June, 1807, which was given to us among the other papers, but was not in evidence, and is not a part of the case, had been given in evidence on the trial by the jury, the judgment of the county court must have been affirmed.

Parol evidence that the President of Dartmouth College had ever been considered as the President of the school, might have been sufficient; and that such evidence might have been procured, is apparent from the act of New-Hampshire, before alluded to. But this act was not in evidence in the present case, and the only parol evidence upon this point was that of Mr. Olcott, who testified that he had no certain knowledge that the several Presidents of Dartmouth College, who have succeeded Dr. Wheelock, exercised the office of President of Moore's Charity School, but that it has always been understood that the charge and control of said school has been exercised by the President of Dartmouth College. The court charged the jury that this evidence, if believed, was sufficient to entitle the plaintiff to recover.

We cannot see, in the testimony detailed, sufficient evidence that Dr. Lord was successor of Dr. Wheelock as President of the school, or that the President of Dartmouth College is President of that school; and for this reason, the judgment must be reversed, and a new trial granted. It is with some reluctance that we find ourselves compelled to come to this conclusion.; as the act of New-Hampshire, before alluded to, if it had been in evidence, would have been conclusive on this question.