Oscar N. Nadeau et ux. *v.* Union Mutual Fire Insurance Co.

May Term, 1938.

Present: Moulton, Sherburne, Buttles and Sturtevant, JJ., and Jeffords, Supr. J.

Opinion filed October 4, 1938.

*Raymond L. Miles* and *J. W. Redmond* for the plaintiff.

*Fred E. Gleason* for the defendant.

SHERBURNE, J.   On June 14, 1933, the defendant issued a five-year fire insurance assessment policy to the Orleans Trust Company, the then owner of the so-called Carleton Hamblett farm, therein insuring certain buildings and personal property. This policy contained the following provisions:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership, or * * * (d) if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance, * * * or (e) if this policy be assigned before a loss."

"Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage occurring * * * (b) while the hazard is increased by any means within the control or knowledge of the insured."

"No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such pro-

vision or condition be held to be waived unless such waiver be in writing added hereto.''

"This policy shall be cancelled at any time at the request of the insured. This policy may be cancelled at any time by the company by giving to the insured a five days' written notice of cancellation, and upon cancellation of this policy either by the insured or the company the insured shall pay immediately all assessments accrued to the date of cancellation.''

During all the time here in question George O. Burton of Derby was a soliciting agent of the defendant. He received the application for the policy here in suit from the Orleans Trust Company, and when the policy came through delivered it to the Trust Company.

On August 19, 1935, the Trust Company sold and conveyed this farm to the plaintiffs, who on the same date, to the knowledge of its vice-president, mortgaged it to third parties to raise a portion of the purchase price. On August 21, 1935, this vice-president of the Trust Company, as agent of the plaintiffs, wrote Burton as follows (plaintiffs' ex. 7) :

"I am enclosing herewith Union Mutual Fire Insurance Company Policy No. 276555 and No. 276837 insuring what is known as the C. A. Hamblett farm in Morgan for $3200. and personal property in the name of Wilbridge Chaloux. The Hamblett farm has been sold to Oscar N. Nadeau and wife and we, therefore have no further interest in it nor in the personal property. Will you please transfer our interest in these two insurance policies to the said Nadeaus?''

The first mentioned policy is the one here in suit. No claim is made about the second policy. Burton duly received this letter through the mail, and through misunderstanding or otherwise his clerk wrote in pencil the word "Cancellation" on the back of the policy in suit, and he forwarded it by mail to the defendant at Montpelier, where it was stamped cancelled on August 29,

1935, and a notice of an assessment from the anniversary date to that date for the amount of $4.06 was sent to Burton to collect, which he forwarded to the Trust Company, and which it paid by a check dated September 6, 1935.

On July 24, 1936, the barns on the farm and their contents were burned, and on August 31, 1936, plaintiffs' attorney wrote the defendant as follows (plaintiffs' 10):

> "On the 19th day of August, 1935, the Orleans Trust Company of Newport, Vermont, sold and conveyed by warranty deed to Oscar N. Nadeau and Frances Nadeau of Morgan, Vermont, the farm known as the Carleton Hamblett in Morgan, Vermont, and some of the personal property then on the farm and in the buildings.

> "On the same day Oscar N. Nadeau and Frances Nadeau mortgaged the real estate to Ward B. and Lulu N. Chase of Morgan for $2500.00.

> "This letter is to notify you that on July 24th, 1936, the barns were struck by lightning and burned, together with about 20 tons of hay therein and some other personal property. This property, as I understand it was at one time insured with the Union Mutual Fire Insurance Company under Policy No. 276555 and No. 276837. If you desire any further or other information concerning this information or the loss in connection therewith in the form of Plaintiffs' loss or otherwise, please advise me, as Attorney for Mr. Nadeau and his wife and the mortgagees and I will be glad to furnish it."

To this defendant replied on September 2, 1936 (plaintiffs' 9):

> "We have received your letter dated August 31, 1936. You are correct in your statement that at one time the property, or part of it, mentioned in your letter was insured by this Company under the policies mentioned in your letter. We see no reason at this time to ask you for further informa-

"tion in this case, as our liability and interest in this property ceased on the date of the cancellation of the policies, which was on or about August 29, 1935."

Up to the time of the fire the plaintiffs had heard nothing from Burton or the defendant about the policy in suit, and neither the Trust Company nor its vice-president had received any information concerning same, except such as may have been stated upon the assessment notice above referred to, the contents of which did not appear.

This action is in contract. Among the defenses pleaded are that the defendant never entered into any contract with the plaintiffs, and that it never received or demanded any consideration for the purported coverage. In its fourth plea the defendant claims certain forfeitures under the terms of the policy; and to this the plaintiffs in their replication reply that the defendant refused to pay damages for the loss upon the ground that the policy was cancelled on August 29, 1935, and thereby waived all other defenses in said plea. Verdict and judgment were for the defendant, and the plaintiffs come here upon exceptions.

The plaintiffs excepted to the exclusion of the two letters, plaintiffs' 9 and 10, above set forth. They offered 9 for the purpose of showing that the defendant relied on the cancellation of the policy as its only ground of defense, and so was confined to that and had waived other forfeitures. 10 was offered as showing how 9 came to be written. In support of their exception they rely upon *Cummings* v. *Conn. Gen. Life Ins. Co.*, 102 Vt. 351, 360, 362, 148 Atl. 484. That case reviews our recent cases and says: "The logic of those cases requires us to take the broad ground that, when one defense is specified by an insurer as its reason for refusing to pay a loss, all others are waived. * * * The rule works no hardship on the insurer. Considerations of public policy require that he shall deal with his individual customers with entire frankness. He may refuse to pay and say nothing as to the basis for his refusal. In that case, all defenses to an action on the policy are available to him. He may refuse to pay on a particular ground reserving the right to defend on other grounds with the same result. But when he deliberately

puts his refusal to pay on a specified ground, and says no more, he should not be allowed to 'mend his hold' by asserting other defenses after the insurer has taken his word and is attempting to enforce his liability."

■ ■ Had the writer of 10 stated some of the facts above recited to the effect that the agent, Burton, had been asked to have the policy assigned to the plaintiffs, and that they were entitled under the policy to be paid for their loss because they had heard nothing from him or the defendant, another question might be presented. All that is stated about the policy is that the writer understood that the defendant at one time had insured the property. No claim is made that there was any insurance in force at the time of the fire. An insurer is entitled to know that a demand is being made upon it before treating anything that it may say as a waiver. Although we do not question the good faith of the writer of 10, to hold that 9 constitutes a waiver would be laying down a rule whereby an unscrupulous claimant might trick the unsuspecting official of an insurance company. The letters were properly excluded.

■ ■ The plaintiff, Oscar N. Nadeau, having testified that he had never heard from the defendant or any one else that the defendant would not transfer the policy, was asked: "If you had such notice what would you have done?" In this connection plaintiffs offered to show that in that event they would have procured other insurance, and that, relying upon the defendant's having assigned the policy to the plaintiffs because they did not hear from the defendant, insurance was not procured. The purpose of the question and offer was to lay the foundation for an estoppel against the defense that there never was any contract of insurance between the parties. The question was properly excluded because estoppel was not pleaded. An estoppel to be available, must be pleaded, if, as here, the party relying upon it has an opportunity to plead it. Otherwise it is waived. *Cutler Co.* v. *Barber,* 93 Vt. 468, 475, 108 Atl. 400; *Gray* v. *Pingry,* 17 Vt. 419, 424, 44 A. D. 345; *Isaacs* v. *Clark,* 12 Vt. 692, 36 A. D. 372; *Brinsmaid* v. *Mayo,* 9 Vt. 31; *Lord* v. *Bigelow,* 8 Vt. 445; *Sawyer* v. *Hoyt,* 2 Tyl. 288.

■ The plaintiffs excepted to the exclusion of a question to the vice-president of the Trust Company asking if he ever had any notice or writing of any kind that the policy was can-

celled before the fire. Except as bearing upon the question of estoppel, which, as we have seen, was not available, the question called for immaterial matter, and was inadmissible.

■ At. the conclusion of the plaintiffs' case, the court directed a verdict for the defendant, to which plaintiffs excepted. This exception is briefed on the basis of estoppel only and is covered by what we have just said. Consequently it is unnecessary to determine what effect plaintiffs' undisclosed mortgage to third parties would have had if an estoppel had been pleaded and established.

*Judgment affirmed.*

When this cause was first heard, at the February Term, 1938, it was assigned to Mr. Justice Slack. Subsequently, and after his decease, it was reassigned to Mr. Justice Sherburne, and was reargued at the May Term, 1938.