# WINDSOR COUNTY.

JACOB, *ex dem.*

PAINE & MORRIS

*vs.*

JOEL SMEAD.

Paine, &c.
vs.
Smead.

Ejectment for lands in Windsor,

General Issue—Not Guilty.

On trial, the plaintiff gave in evidence an office-copy of a charter, under New Hampshire, of the township of Windsor, in which Simeon Chamberlain was a grantee—a deed from Chamberlain to J. Willard, dated the 16th of July, 1761; from Willard to Israel Curtis, 3d October, 1767; from Curtis to William Smead, 1st May, 1770; a power of attorney, Dec. 30, 1771, from William Smead and others, proprietors under the New Hampshire grant, to N. Stone, for the purpose of authorising him to procure from the Governor of New York, a confirmation of their claims in Windsor, either in their names, in the name of Stone, or in the name of any other person or persons, as he should think proper.

Plaintiff's evidence.

The New York charter, reciting, that the New Hampshire charter was surrendered, etc., was dated the 28th March, 1772, to N. Stone, and twenty-one other persons. A release from the other grantees to Stone, dated the 31st of March, 1772; a deed from Stone to Henry Cruger, April, 1772, of 3000 acres of land in Windsor, which was sold by agreement of the New Hampshire proprietors to defray the expenses of the New York

<div style="margin-left:auto">Paine, &c.<br>vs.<br>Smead.</div>

grant. The will of Henry Cruger, who is since dead, dated June 11th, 1779, signed, sealed and attested by three witnesses, in which, among other things, there is a devise to his executors, N. Watson, —— Van Shaack, and —— Cruger; to sell all, or any part of his lands in America (he died in England) in fee. This will has been proved in England, and was recorded in Windsor, November 7th, 1787.

It was objected by the defendant's counsel, that Cruger's will has never been probated in any proper office in this State. But, by the Court, it is not necessary to the conveyance; it is sufficient to prove the execution of the will.

*A will need not, for the purpose of passing lands be probated.*

A deed from two of the executors to the lessors of the plaintiff, dated 23d of April 1787, acknowledged and recorded.

The land demanded is 100 acres, parcel of the 3000.

A receipt from W. Smead to N. Stone, for a deed given to himself and a third person, of his, W. Smead's, proportion of land in Windsor, under the New York grant.

Objection by the defendant's counsel, that the receipt was not proper evidence to prove a conveyance.

*Court.*—It is not designed to prove a conveyance from W. Smead. Grantees under a former charter might surrender to the King, without deed, and may be bound by acceptance of, and acquiescence under a second grant, without deed. The receipt may be evidence of such acceptance and acquiescence.

*Acceptance and acquiescence under a second grant may be provided without deed.*

Several witnesses proved that there was a general acceptance and acquiescence in the New York grant, and by W. Smead in particular. It did not appear that W. Smead, who is since dead, did, in his lifetime,

*Proof that the N. H. proprietors generally accepted.*

make claim to the lot in question, which was divided to the Chamberlain right, under New Hampshire. The

*Proof that W. S. accepted in particular.*

defendant claims as heir to W. Smead, and has taken possession since his death.

It was conceded that the defendant is son and heir to W. Smead.

No evidence was produced on the part of the defendant.

In the charge to the Jury, the Chief Justice made, among others, the following observations, to which Judge Knight, the other Judge in Court, fully agreed.

The right now in question, as far as relates to the operation of the charters, must be determined agreeably to the law, then in force, which was the common law of England. The Governor of New Hampshire, while this territory was under that juris liction, and, after the transfer to New York, the Governor of that province had a power to grant such lands as were then in the right of the King. These grants were not made in the personal, or even jurisdictional right of the Governors, but by royal authority, given for that purpose; and they are to be considered, in their construction and operation as royal grants. The King was, in view of the law, the ultimate owner of all lands within his dominions, and had the reversion in himself. An estate in fee, the highest right which a subject could have to lands, was said to be derived out of the King's right, and to be subordinate to that right. Agreeably to this doctrine, a surrender might be made to the King, of a former grant. On a surrender, the King was in of his former right, and might grant again as he pleased.

The plaintiff in this case relies that the New Hampshire charter of the town of Windsor, was surréndered into the hands of the Governor of New York, for the crown; and, that the letters patent issued, in consequence, by that Governor, acting for the Crown, and

*Margin notes:*

Paine, &c. vs. Smead.

Defendant is heir to W. Smead.

Charge to the Jury.

Decision in this case ought to be agreeably to the law in force at the time —which was the common law of England.

Power of the Governors to grant.

The grants were made by authority from the crown, and are to be considered as royal grants.

The King the ultimate owner of the land.

All private right derived from, and subordinate to his right.

Surrender might be made.

Plaintiff relies on a surrender of the New Hampshire charter.

And that the NewYork grant operates as a confirmation.

Paine, &c.
vs.
Smead.

intended to operate by way of confirmation to the claimants under the former grants, were good and valid. The act, itself, by which the surrender was made, is not produced. The proof of the surrender of the New Hampshire grant, arises from the power given to Stone, the agent. From the recital contained in the letters patent of New York, which, we think, is good ground of presumption, and, indeed, *prima facie* evidence of a surrender; ———— and from the acceptance and long acquiescence of the NewHampshire proprietors under this grant, it should seem that the acceptance and acquiescence alone, which must have involved almost the whole property of the land in the town, would be construed a waver of the former grant, and a confirmation of the latter. It may be further observed, the original charter of New Hampshire has not been produced; and it is agreed that it was lodged in the office of the Secretary of the Province of New York, previous to issuing these letters patent, and that it remained in that office.

*Recital of a surrender in the second grant, prima facie evidence.*

*Long acquiescence under the second, a waver of the first.*

*Presumption from the N H. charter not being produced.*

The defendant in this action stands in the place of his father, William Smead; and his claim must be viewed in the same light. W. Smead, who claimed the premises under the grant of New Hampshire, was a proprietor of several rights or shares, and was one of those who executed the power to Stone to procure a confirmation from the Governor of New York. It is in evidence that W. Smead accepted from Stone a title of lands in Windsor, to himself and vendees, in full for his claim under the former grants, in part, of the same lands which he formerly claimed, and in part of other land, the benefit of which he enjoyed and left to his heirs; for it will be observed, that under the New York grant, the whole property was vested in Stone, in trust, that he might convey to every one, ac-

*Defendant stands in place of W. Smead.*

*W. Smead executed a power to Stone, and took from him a deed of land, &c.*

cording to his right ; and that the division which was made under the New Hampshire title, was not then taken to have any legal efficacy, but served only for description. Had the question arisen between a New York claimant, and a claimant under New Hampshire, who had disagreed to these proceedings, and refused any benefit under the second grant, it might have had another consideration ; at least, it would have stood in a more favoralbe light. The Governor of New York, and the authority of that Province were guilty of the highest oppression and injustice toward the New Hampshire grantees. They held the titles derived through the Governor of New Hampshire to be void. They were able to enforce this opinion by violent laws, and by the arbitrary decisions of their Courts. In consequence of these measures, they extorted large sums of money from the New Hampshire grantees and settlers, for what they called a confirmation. This was practised upon the proprietors of Windsor. It is insisted that the injustice of this demand ought to invalidate the New York grant. It is wholly a new doctrine, that the greatness, or, if you will, the enormity of the consideration given, should invalidate a grant. If it be not a legal reason, it is certainly a favorable argument for the grantees, in support of their grant.

Verdict for the Plaintiff.

*Paine, &c.*
*vs.*
*Smead.*

*It would have been more favorable for a proprietor who had dissented.*

*The enormity of the consideration given cannot invalidate the grant.*

[END OF THE REPORTS.]