RUTLAND,                CALEB HALL *vs.* JOHN COLLINS.
*January,*
1832.

When one claims title to land under the vendue-deed of a collector of taxes, he must prove *that the several essential things required by law to be done* previous to the sale, have been performed accordingly.

Tho recitals in a collector's deed are not evidence of what has been done by other persons previous to its execution ; and

*Quære,* whether such recitals are evidence of the doings of the collector himself.

This was an action of ejectment to recover the possession of lands in Tinmouth, and was brought up to this Court on the following bill of exceptions :

"Upon the trial of the cause before the county court, A. T. 1830, the plaintiff claimed title to the premises in question by virtue of an attachement, judgement, and levy of an execution, in his favor against one John Collins, jun. Said execution, dated 20th November, 1827, and levied by I. Dike, jr. Esq., sheriff, on the 4th day of January, 1828 ; which levy was not objected to by the defendant. The plaintiff then offered in evidence a copy of a deed from Isaac Burton, as collector of internal duties for the first collection district of Vermont, under the act of Congress of March 5th, 1816, to Daniel Douglass, dated 4th June, 1819, acknowledged same day, and recorded 21st September, 1819 ; and a copy of a deed from Douglass to John Collins, jr., dated and acknowledged 21st June, 1819, and recorded 21st September, 1819 ; which said deeds are made a part of the case. To the admission of these deeds the defendant objected, unless the plaintiff should prove the provisions of said act of congress, as to the sale of the lands mentioned in Burton's deed, complied with. But the court overruled the objection of the defendant, and admitted the said deeds to be read as evidence to the jury to prove the title of the lands in question in the plaintiff, without such proof ; and they were read by the plaintiff. The defendant then gave in evidence to the court and jury a copy of a deed of said lands from John Collins, jr. to Eastus Barker, dated and acknowledged 21st September, 1819, and recorded 22nd September, 1819. The plaintiff then offered in evidence to the court and jury a copy of a writing, the original of which was signed E. Barker, and without any date, as evidence to prove that thereby the said deed from Collins to Barker had become a mortgage ; which said last mentioned deed and copy of said writing are made a part of the case. To the admission of which said copy of a writing the defendant objected, upon the ground that the same having been executed subsequent to the deed from Collins to Barker, and not a part of the same transaction, could not create a defeasance, and was in itself unmeaning. But the court overruled the objection, and admitted the writing to be read as evidence to the jury on the part of the plaintiff, for such purpose. The defendant then offered in evidence to the jury an execution, levy of the same, and prior attachment of the lands

RUTLAND,
January,
1832.

Hall
vs.
Collins.

in question, in favor of Rathbone and Vaughan, against said John Collins, jr. ; which said attachment and levy were prior to 'the plaintiff's attachment and levy. The levy was made by the constable of Tinmouth, on the 4th day of July, 1827. To the admission of which the plaintiff objected, and then and there proved that the justice of the peace who appointed the appraisers who appraised the lands on the said execution, was within the fourth degree of affinity to William Vaughan, one of the firm of Rathbone and Vaughan ; and, thereupon, the court rejected the levy, and refused to allow the same to go to the jury as evidence of title in the said Rathbone and Vaughan. The jury found a verdict for the plaintiff."

*Copy of the collector's deed :*—" To all people to whom these presents shall come, Greeting : Know ye, that I, Isaac Burton, of Manchester, in the first collection district within the State of Vermont, and collector of internal duties for the United States of America for the district aforesaid, did, at Manchester aforesaid, on the twentieth day of November, 1816, receive from the principal assessor for said district, a certified copy of a list by him made out of all the property in said district subject to the tax assessed by the act of Congress of the United States, passed on the 5th day of March, 1816, with the portion thereof owned, or superintended, by each person in said district, with the sum of said tax due thereon, and the person owning or occupying the same. And I, the said collector, within ten days after receiving such list, did advertise in one newspaper, to wit, the Rutland Herald, printed in said district, and posted up notifications in four public places in said district, giving notice that said tax had become due and payable, and stating the times and places at which I would attend, within twenty days after such notification, to receive said tax, and after the said times, stated as aforesaid, and within sixty days after the receipt of said collection list, as aforesaid, I applied at the dwelling house of each person in said district who had not paid his or her tax, and then demanded the same ; and after twenty days from the time of making such demand of each person respectively, as aforesaid, I proceeded to collect said tax of the several persons then delinquent in the payment of the same, by distress and sale of the goods, chattels and effects of each person, so delinquent as aforesaid ; and I could not find goods, chattles and effects of the person owning, occupying, or superintending, the parcel of land and buildings hereafter described, sufficient to satisfy the tax upon the same : whereupon I gave publick notice, by a notification advertised in a newspaper, to wit, the Rutland Herald, printed in said district, and posted up in ten public places in said district, that I should sell the same lands and buildings at the dwelling house of Isachar Reed, in Rutland, in said district, on the 20th day of May, 1817, at public vendue, to the highest bidder, or so much thereof as would pay said tax, together with the addition of twenty *per centum* on said tax, due upon said land and

Rutland,
January,
1832.

Hall
vs.
Collins.

buildings; which day of sale was more than thirty days after the advertising and posting up notifications of such sale as aforesaid. And at the said time and place of sale, so notified as aforesaid, the said tax on said land and buildings not being then paid, I exposed the same for sale at public vendue, and sold to Daniel Douglass of Rutland, in the State of Vermont, for the sum of *one dollar and seventy five cents*, the following piece of land and buildings, thereon, to wit, ONE HUNDRED *and* FIFTY ACRES of LAND lying and being in the south east part of Tinmouth, and is bounded as follows, (viz.) north by land owned by Girly Marsh of Clarendon; East on Wallingford west line; south on Nathaniel Chipman; on the west by Spencer Nicholson; it being all the land set in said collection list to John Collins of Tinmouth, in said district. And the said Daniel Douglass then offering to pay the tax then due from said John Collins of Tinmouth in said district, and twenty *per centum* thereon for the least quantity of said property of any person bidding; and two years having elapsed since said sale, and no person having paid or offered to pay to me the said sum paid said purchaser, as aforesaid, with interest thereon, at the rate of twenty *per centum per annum* for redemption of said property; Therefore, for the consideration of the said sum of *one dollar and seventy-five cents*, so paid by said Daniel Douglass, as aforesaid, I do in my said capacity of collector, as aforesaid, give, grant, sell, convey and confirm unto the said Daniel Douglass, his heirs and assigns forever, the premises above described as having been sold as aforesaid.

To have and to hold the above granted premises with all the privileges and appurtenances thereof to him the said Daniel Douglass, his heirs and assigns, to his and their own use, benefit and behoof forever. And I hereby covenant and agree with the said Daniel Douglass, his heirs and assigns, that I, in my said capacity, had and have good right to sell and convey the same premises as aforesaid. Provided nevertheless, if said premises belonged to any infant or infants, persons of insane mind, or beyond sea, or to any married woman or women, at the time of such sale, and such person or persons shall within two years after such liability be removed, or their return from beyond sea into the United States, pay to the clerk of the district court for the Vermont district, the said sum paid by said Daniel Douglass for said premises, a compensation for all the improvements he may have made on said premises subsequent to his purchase, the value of said improvements to be ascertained by three or more neighbors, freeholders, to be appointed by said clerk, and assess the said value on oath, and an actual view of said improvements, and make return thereof to said clerk, said premises shall revert back to said original owner or owners, and from that time forward this deed shall be null and void, otherwise to remain in full force and virtue forever.

In testimony of all which, I, in my said capacity, hereunto set my

hand and seal this fourth day of June A. D. 1819, and in the in-  dependence of the United States the forty third year.

In presence of us,        *Isaac Burton, Collector.*"   [L. S.]

*Saml. C. Raymond,*  *Wm. P. Black.*

*United States of America,* } At Manchester, in the county of  *Vermont district, to wit,* } Bennington, within the said district  and State of Vermont, on the fourth day of June, 1819, the said  Isaac Burton personally appeared and acknowledged the forego-  ing instrument by him sealed and subscirbed, to be his free act and  deed.

Before me        *Samuel C. Raymond, Justice Peace.*

*Clark, for defendant.*—The first point in this case depends  on the validity of a deed from Isaac Burton, as a collector of internal  duties, under the act of congress of March 5th, 1816.—See *the  act in laws of* 1816, *p.* 12, *which refers to the laws of* 1815,  *c.* 21, *p.* 35. In the 26th section of the last mentioned act, (1815,  p. 46 and 47,) the duties of the collectors are pointed out so far  as relates to the requisite duties of collectors before they can re-  sort to the sale of real estate of any delinquent, for the payment of  taxes. And it is contended that no case could have occurred un-  der the act, until each and every pre-requisite which was required  by law, had been exactly complied with and performed by the col-  lector. The 27th section, (p. 48, of the laws of 1815,) directs  the collectors as to the necessary newspaper advertisements, and  notifications to be posted up, before any actual sale of lands can  legally be made. This also, it is insisted, must be strictly pur-  sued ; and if the collector fails to do so, and sells, the sale is void.  The collector has no general, but a special authority, to sell lands  for taxes in particular cases mentioned in the act. Those cases  must exist, or his power does not arise. It is a mere naked power  not coupled with an interest. The collector must pursue the  power, or his act will not be sustained by it.—4 *Cranch,* 403,  *Stead's Executors* vs. *Course* ; 9 *Cranch,* 64, *Parker* vs. *Rule's  Lessee* ; 4 *Wheaton's Rep.* 77, *Williams et al.* vs. *Peyton's Les-  see.* By the authorities above cited it seems to be entirely settled  by the Supreme Court of the U. S., that all the pre-requisites of  an act assessing a tax upon lands, must be strictly observed and  pursued by the collector ; otherwise, the sale (and, of course, the  deed,) would be of no validity, and *void,* because a case would  not have otherwise occurred in which a collector would have pow-  er by the act to sell. The case in the 4th *Cranch* was one which

RUTLAND,
January,
1832.

Hall
vs.
Collins.

arose under the tax laws of Georgia for 1790 and 1791. The case in the 9th *Cranch* arose un derthe act of Congress of July 14, 1798, imposing a direct tax. And the case in the 4th *Wheaton* was an action of ejectment brought by the original patentee in the circuit court for the district of Kentucky, against a purchaser at a sale made for the non-payment of the direct tax imposed by the act of Congress of the 14th July, 1798, and came up to the Supreme Court of the U. S. upon a writ of error. The defendant, *(Peyton)* in that case stood precisely in the situation of the plaintiff, *(Hall,)* in this case ; both resting their title upon the validity of a collector's sale for taxes, and deed, under the two acts of Congress, the provisions of which were precisely similar. The 26th and 27th sec. of the act of 1815, altered by the act of 1816, is for every legal purpose an exact copy of the 9th, 10th and 13th sec. of the act of 1798;—*(See 4th Wheaton*, 80 and 81,) and both are directory to the collector as to the sales in the respective acts. In all the cases above cited, the principle is decided, that to make a collector's deed of any validity, it must be proved upon the trial that every pre-requisite of the law has been performed by the collector before the sale of the lands ; and that the *onus probandi is* upon the vendee, and all who seek to claim under him. And it was decided in the case of *Ronkerdorf* vs. *Taylor*, 4 *Peter's Rep.* 349, *(cited in the American Jurist, no. 8, p.* 381,) that no presumption is raised in behalf of a collector who sells real estate for taxes, and the proof devolves upon the person who claims under the collector's sale. The Supreme Court of the U. S. having given a construction to the laws of congress upon which all the foregoing cases depended, (except the one in the 4th *Cranch,*) and having a right to construe those laws, it is insisted that the state courts are not at liberty to construe them differently in a similar case.

If the plaintiff in this case should contend that the recitals in the deed is evidence for him to prove the proceedings of the collector previous to the sale, then it is answered, 1st. That the recitals in the deed from Burton to Douglass fell very much short of complying with the act under which the sale was made ; which will be easily perceived by comparing the recitals with the 26th and 27th sec. of the act of 1815. 2nd. If the recitals of the deed were perfect, still it is not even *prima facie* evidence of the facts intended to be proved by them. The party claiming under such deed must prove, *independent of the recitals in the deed, that all the previous acts have been performed.* It was substantially so

RUTLAND,
January,
1832.

Hall
vs.
Collins.

decided in all the cases above cited ; and expressly so decided in February, 1827, by the Supreme Court of the State of New-York, in the case of *Jackson, Cook and others* vs. *Shephard.* See 7 *Cowen's Rep.* 88. This was a case arising under the act of Congress of July 22d, 1813, the 21st and 22d sections of which are directory to the collector, and are nearly *verbatim* with the sections for the same purpose in the act of 1798 and 1816.

By the foregoing authorities it seems to be settled law, that a party seeking to hold under a collector's deed, must fortify his title by proving, *independent of the collector's recital in his deed,* "that the previous acts have all been performed ; that a purchaser at a collector's sale must see to it that those acts have been strictly pursued ; that he must preserve the evidences of them as necessary to preserve his title. He can easily do this by preserving the Gazettes, notifications, &c. It would be always difficult, and sometimes impossible, for the original owner to prove the negative. It is a case on the part of the purchaser which ought not to be favored." And surely, in this case, where Douglass purchased at the collector's sale 150 acres of land for $1,75, there can be no equity in his holding it against a person who has laboured many years to acquire it ; for there are no lands in Tinmouth of such trifling value. If the principles be sustained, the county court erred in admitting the deed in question, (without the proof required by the defendant,) as evidence to prove an absolute, or even a *prima facie,* title in the plaintiff, and, of course, the deed from Douglass to John Collins, Jr. conveyed no title, and the plaintiff gained nothing by the levy of his execution ; and a new trial ought to be granted.

But if the court should even decide differently upon the first point, then the defendant contends, 2nd. That the case shows, that, if John Collins, Jr. acquired any title by virtue of his deed from Douglass ; that he had conveyed all his right to Eastus Barker, previous to the levy of the plaintiff's execution, or the service of his writ,—that the deed from John Collins, Jr. to Barker proves the title out of the plaintiff. For it is contended, that the writing, unexplained or supplied by any other evidence, does not amount to a defeasance to the deed to Barker from John Collins Jr. ; that of itself it is perfectly unmeaning, vague, and unintelligible. No definite application can be gathered from it. Whether it was competent for the plaintiff to have rendered this paper applicable to the case by *parol* upon the trial or not, is a question not now to be decided in this court. 3rd. It is apparent from the writing,

Rutland,
January,
1832.

Hall
vs.
Collins.

as vague as it is, that it was a subsequent transaction to the deed, and not a part of it, and therefore could not create a defeasance of itself. See 1 *Swift's Dig*. 133, *no*. 8 ; 2 *do*. 163 ; 3 *Salk*. 241 ; 5 *Bac. Abr*. *(B)* 6, 8, 9, *and* 10. 4th. The defendant proved upon trial the title in Rathbone and Vaughan, by virtue of an attachment and the levy of an execution in their favor against John Collins, Jr., which attachment and levy were prior to the attachment and levy of the plaintiff, which ought to have defeated the plaintiff's right of recovery, unless it was competent for the plaintiff to prove upon *that trial*, that the justice who appointed the appraisers upon the execution of Rathbone and Vaughan was within the 4th degree of affinity to William Vaughan, one of the firm of Rathbone and Vaughan. It is contended by the defendant, that the lands were not set off to the firm of Rathbone and Vaughan as partners in co,. and not to either individually ; and further, that it was not competent for the plaintiff to form an issue to decide whether the justice was within the 4th degree of affinity to William Vaughan or not in that collateral manner. And that still if the appraisal was fair, and without fraud, the title was consummated, &c.

*Royce and Hodges, for the plaintiff*.—The general rule, that when third persons are interested in the proceedings of an officer, both the validity of his appointment and the correctness of his proceedings shall be presumed, is supported by all the authorities upon the subject. It has been recognized in this state, especially in cases of sales of personal property on execution, levy of executions upon real estate, and sales thereof upon collector's warrants. It is objected, however, that this presumption is not raised in favor of officers appointed for special purposes. But the most rigid investigation of the cases will not furnish a single reason for the general rule which has not the same force and bearing in this instance. The officer is equally the creature of the government, the agent of the people, and among others of the parties, and if guilty of neglect, is equally responsible to those injured. As between him and them, he ought perhaps to be held to strict proof of the legality of his proceedings. But when third persons are concerned, the burden of proving his neglect should be thrown upon the party alleging it. And why may not individuals put as much faith and confidence in those officers who are selected for special purposes, as in those who discharge the ordinary functions of government ? As to the forms prescribed by the act lay-

RUTLAND,
January,
1832.

Hall
vs.
Collins.

ing this tax, (which after all are merely directory,) it is at any time more difficult for the purchaser to establish a compliance than for the party whose estate is sold to prove the omission of any important requisite. In practice it is impossible for the purchaser either to ascertain the correctness of the officer's proceedings prior to the sale, or to regulate them afterwards. He can only trust to the faithfulness of the officer whom the government has appointed and controls. The land owner, on the other hand, has the proceedings upon one estate only to investigate, and his attention is called to the subject by repeated advertisements which he is bound to notice. He can easily ascertain and prove any fatal negligence, and ought to apprize the purchaser thereof, when he finds that his land is exposed for sale. And if he permits it to be sold without remonstrance, he should be treated in the same manner as if he had permitted the purchase of an estate without giving notice of his having claims or incumbrances thereon. Again, as the officer makes no return of these proceedings, it follows that, unless this deed be considered one, so far as to be *prima facie* evidence of the facts recited, the title to the real estate is not merely liable to be affected by parol evidence, but depends entirely upon it. The writing objected to was not offered as a defeasance, but as evidence of trust, which made the deed then in question a mortgage. And a mortgage cannot be set up by a stranger to show title out of the mortgagor in an action of ejectment.—*Adams* vs. *Jackson*, 2 *Aik.* 145 ; *Beattie* vs. *Robin*, 2 *Vt. Rep.* 181 ; *Proprietors* vs. *Ransom*, 14 *Mass.* 145 ; *Blossom* vs. *Cannon*, 14 *Mass.* 177 ; *Powell* vs. *Milbane*, 3 *Wils.* 355, *and cases cited* ; 3 *Stark. Ev.* 1249, *and cases cited* ; *Hazard* vs. *Martin*, 2 *Vt. Rep.* 77 ; *The King* vs. *Haslingfield*, 2 *M. and S.* 558 ; * * * * *of Harriss et al.* vs. *Bodenham et al.*, 9 *B. and C.* 495 ; *Ewer* vs. *Corbet*, 2 *P. Wms.* 148 ; 4 *Kent's Com.* 153, 154, *and cases cited* ; *Staunton* vs. *Bannister*, 2 *Vt. Rep.* 464.

BAYLIES, J., *delivered the opinion of the Court.*—We are called upon to consider the effect of a vendue deed, executed by Isaac Burton, collector of taxes, to Daniel Douglass, on the 4th of June, A. D. 1819, which deed is made part of the case, and is marked A.

The power of Isaac Burton, as collector, to convey the land in question, to satisfy the taxes, may be learned in the opinions of the Supreme Court of the United States, expressed in the cases refer-

Rutland,
January,
1832.

Hall
vs.
Collins.

red to by the defendant's council. In the case of *Stead's Executors* vs. *Course*, 4 *Cranch*, 403, the court say, "It would be going too far to say that a collector, selling land with or without authority, would, by his conveyance, transfer the title of the rightful proprietor. He must act in conformity with the law from which his power is derived, and the purchaser is bound to inquire whether he has so acted. It is true that full evidence of every minute circumstance ought not, especially at a distant day, to be required. From the establisment of some facts, it is possible that others may be presumed, and less than positive testimony may establish facts. In this case, as in all others depending on testimony, a sound discretion, regulated by *the law of evidence*, will be exercised. But it is incumbent on the vendee to prove the authority to sell; and the question respecting the fairness of the sale will then stand on the same principles with any other transaction in which fraud is charged."

In the case of *Parker* vs. *Rule's Lessee*, in 9 *Cranch* 64, the court decide, that under the act of Congress to lay and collect a direct tax, (passed July 14, 1798,) before the collector can sell the land of an *unknown* proprietor, for the non-payment of taxes, it is necessary, that he should advertise the lists of lands on which taxes have not been paid, and the statement of the amount due for the tax, and the notification to pay, for 60 days, in four gazettes of the state, if there be so many.

In the case of *Williams et al.* vs. *Peyton's Lessee*, 4 *Wheat.* 77, the court in their opinion say, "This is an action of ejectment brought in the circuit court for the District of Kentucky, by the original patentee, against a purchaser, at a sale made for non-payment of the direct tax, imposed by the act of Congress of the 14th of July, 1798, c. 92. As the collector has no general authority to sell lands at his discretion for the non-payment of the direct tax, but a special power to sell in the particular cases described in the act, those cases must exist, or his power does not arise. It is a naked power, not coupled with an interest ; and in all such cases, the law requires that every pre-requisite to the exercise of that power must precede its exercise ; that the agent must pursue the power, or his act will not be sustained by it."

"This general proposition has not been controverted ; but the plaintiffs in error contend, that a deed executed by a public officer is *prima facie* evidence that every act which ought to precede that deed had preceded it ; that this coveyance is good, un-

less the party contesting it can show that the officer failed to per-
form his duty."

" It is a general principle, that the party who sets up a title must
furnish the evidence necessary to support it.   If the validity of a
deed depends on an act *in pais*, the party claiming under that
deed is as much bound to prove the performance of the act, as he
would be bound to prove any matter of record on which its valid-
ity might depend.   It forms a part of his title ; it is a link in the
chain, which is essential to its continuity, and which it is incum-
bent on him to preserve.   These facts should be examined by
him before he becomes a purchaser, and the evidence of them
should be preserved as a necessary muniment of title.   If this
be true in the general, is there any thing, which will render the
principle inapplicable to the case of lands sold for the nonpayment
of taxes?   In the act of Congress, there is no declaration that
these conveyances shall be deemed *prima facie* evidence of the
validity of the sale.   Is the nature of the transaction such, that a
court ought to presume in its favour any thing, which does not
appear, or ought to relieve the party claiming under it from the
burthen of proving its correctness ?

"The duties of the public officer are prescribed in the 9th, 10th,
and 13th sections of the act of the 14th of July, 1798, c. 92.   If
theses duties be examined, they will be found to be susceptible of
complete proof on the part of the officer, and consequently on the
part of the purchaser, who ought to preserve the evidence of them,
at least, for a reasonable time.   It is the peculiar province of
this Court to expound the acts of Congress, and to give the rule
by which they are to be construed."

The above reasoning will apply to the case at bar, which arises
under the act of Congress laying a direct tax upon the United
States of six millions of dollars, for the year one thousand eight
hundred and sixteen, and for succeeding years, passed Jan. 9,
1815; and the act to reduce said tax to three millions of dollars,
passed, March 5, 1816.

Before the collector could give a valid deed under the act of
1815, there were several essential things to be done by the secre-
tary of the treasury, principal assessors, assistant assessors, and
the collector.   To make out a title in the plaintiff under the col-
lector's deed, it must be proved that " the several essential things
to be done," were done previous to the execution of the deed.
And the question is as to the mode of proof.

Can the plaintiff prove by a written certificate of the collector,

RUTLAND,
January,
1832.

Hall
vs.
Collins.

that these prerequisites were performed ? The collector is not by any law made a certifying officer for the purpose ; therefore, his certificate of the facts would be no better evidence of them, than the certificate of any other credible person not upon oath : such certificate, whether inserted in the collector's deed, or not, is not evidence to prove that the prerequisites have been performed.

In the deed (marked A) Isaac Burton, the collector, has *recited* several essential things to have been done. Now, are these *recitals* legal evidence of the facts, so as to make the deed *prima facie* evidence of title in Daniel Douglass, the grantee ? " The rule of law is, that a deed containing a recital of another deed is evidence of the recited deed against the grantor, and all persons claiming by title derived from him subsequently : but such recital is not evidence against a stranger, nor against one, who claims by title derived from the grantor before the deed, which contains the recital."--(See 1 *Stark. Ev.* 369 *n.* 1, and the cases there refered to.) Moreover, "a recital will not operate as an estoppel,or as evidence, against one, who was neither a party to the deed, nor claims under a party."—(See 2 *Stark. Ev.* 23, and the cases there referred to.) According to these principles, the *recitals* in the deed (marked A) cannot affect the title of *John Collins,* who is no party to the deed, and was the owner of the land in question, when it was sold for taxes. I state this as my opinion. But the Court in deciding the case, did not decide, that the *recitals* in the deed were, or were not, evidence of the doings of the collector, who gave the deed ; but they decided, that the *recitals* were not evidence of the doings of other officers concerned, and the deed was not *prima facie* evidence, that the title to the land in question had been conveyed to Daniel Douglass, the grantee. Upon this ground, a new trial is granted in this action. The defendant is to recover his costs at this court ; his other costs to wait the event of the suit.