LUTHER CROSS *v.* WILLIAM MARTIN, JR.; AND SAME *v.* EDWARD P. NORCROSS.

*Effect of Recital in Charter. Legislative Grant. Estoppel by Deed. Presumption of Identity of Persons of same Name.*

The charter of Harris Gore was dated October 30, 1801, and recited that the grant of said territory was made by the legislature, February 25, 1782, to G. and others. On June 1, 1789, G., by deed of warranty, conveyed "one whole right and share in said gore, drawn in my name to me," to G. Jr. The lands of said gore were not in fact allotted or divided till the year 1802. *Held*, that the recital of the grant in the charter, was at least *prima facie* evidence of the fact; and that said grant at once vested title to said lands in the grantees, as effectually as when engrossed and recorded.

When one having no title to land, conveys it with covenants of warranty, and subsequently acquires title thereto, his title enures to, and vests in, his grantee, by operation of law, in discharge of his covenants.

Parties in successive deeds constituting a chain of title, of the same name, are presumptively the same persons; and, in this country, there is no intendment that a party, in twenty years, may not change his residence.

A deed from G. of H., to G. Jr. of H., was presumed to be from father to son.

TRESPASS *qua. clau.* on lands in Harris Gore. The first action was for cutting trees on lots Nos. 10, 13, and 34; and the other for cutting on lots Nos. 10 and 13, in said gore. Pleas, the general issue, and trial by the court, September term, 1872, PECK, J., presiding.

To show title in himself to the lots named in the first action, the plaintiff introduced in evidence a certified copy of the charter of Harris Gore, dated October 30, 1801, which recited that the same was granted by an act of the General Assembly, passed February 25, 1782, and showed that Elijah Gore was one of the grantees therein named. The plaintiff also introduced in evidence a copy of the proprietors' records of said gore, which showed, among other things, a division of said gore into lots, on May 4, 1802, and that in said division lots 10, 13, and 34, were set to Elijah Gore ; and introduced parol evidence, showing that said division had been acquiesced in and acted upon by the proprietors and those holding under them. The plaintiff offered in evidence a copy of a deed from Elijah Gore, of Halifax, in the county of Windham, and state of Vermont, to Elijah Gore, Jr., of said Halifax, dated June 1, 1789, purporting to convey land therein described as " one whole right and share in Harris Gore, so called, in the county of Orange aforesaid, and was drawn in my name to me " ; to the admission of which the defendant objected, because it described the land as land that " was drawn in my name to me," and insisted that it did not describe the land in question, as that appeared to have been drawn to the said Elijah Gore in 1802, and also because the charter of said gore bore date after the date of the deed ; but the court overruled the objections, and admitted the evidence ; to which the defendant excepted. The plaintiff also offered in evidence a copy of a deed from Elijah Gore, Abner Salsbury, and Susan Salsbury, " all of Ellisburgh, county of Jefferson, and state of New York, heirs in law to Elijah Gore, late of Guilford, deceased," to Zenas Barney and Polly Barney, dated February 7, 1821, purporting to convey certain land in Harris Gore, in the county of Caledonia, described as follows, to wit : " Being all our right or claim to the right of land originally drawn to Elijah Gore, our honored father, being divided in three lots, and numbered on the original plan of said gore, Nos. 34, 13, and 10 " ; to the admission of which the defendant objected, because it did not appear that the grantors therein named had any connection with the grantor in said first-mentioned deed, and because it did not appear that the said Elijah Gore therein named,

was the same person named as grantee in said first-mentioned deed. The plaintiff claimed under said deed only through the grantor Elijah Gore, and claimed nothing through the other two grantors. The court overruled the objection, and admitted the evidence; to which the defendant excepted. The plaintiff also offered in evidence the original deed of which said last-named copy was a copy; to which the defendant also objected, for the reasons last aforesaid; but the court admitted the same; to which the defendant excepted. The plaintiff deduced title to said lots from said Barneys to himself, and introduced evidence to show acts of trespass thereon by the defendant. From the foregoing evidence the court found title to said lots in the plaintiff, and rendered judgment for the plaintiff; to which the defendant excepted. The same evidence as to title was introduced, and the same questions raised, and the same rulings and decisions made, and exceptions taken, in *Cross* v. *Norcross*.

*C. H. Heath*, for the defendants.

An identity of the land in question with the land named in the proprietors' records, is not shown by the deed from Elijah Gore to Elijah Gore, Jr., because the land named in said deed is described as " one whole right and share in Harris Gore, so called, and was drawn in my name to me," whereas the allotment of land in said gore was not made until 1802, thirteen years after the date of said deed. *Worthington et al.* v. *Hyllyer*, 4 Mass. 196.

The charter of said land from the state, was not made, signed, sealed, and delivered, until long after the date of said deed; hence, Elijah Gore, Sen., had no title to said land in 1789.

The copy of the deed from Elijah Gore and others to Zenas and Polly Barney, was improperly admitted, as it was not shown that the said Elijah Gore was the same person named as grantee in the deed from Elijah Gore to Elijah Gore, Jr., and it cannot be presumed that persons of the same name are the same persons, especially, as in this case, when the persons are of different places of residence. 4 Kent Com. 462; 2 Greenl. Ev. 326.

*J. A. Wing*, for the plaintiff.

The charter shows that Elijah Gore was one of the original proprietors, and that no other name resembling his was in the

charter. It also shows that the land was granted by the legislature, February 25, 1782, and the charter issued October 30, 1801, as evidence of the grant. The words, "that was drawn in my name to me," mean, simply, granted to me by the legislature.

This deed being a warrantee deed, carries his right when divided into lots; and if he gave a warrantee deed before the charter was procured, the land would pass to the grantee in discharge of his covenants.

The defendant objects to the deed from Elijah Gore and others to Zenas Barney and Polly Barney, because they lived out of the town of Halifax. This deed describes the grantors as the heirs at law of the grantee in the charter; and, as the grantee in the charter had deeded to his son, it is at least *prima facie* evidence, without proof, that he was the son of the grantee of the right. It was at least evidence to be weighed; and the court having found the fact, it is conclusive on this court. The case of *Bogue et als.* v. *Bigelow et als.* 29 Vt. 179, is decisive of the question.

· The opinion of the court was delivered by

REDFIELD, J. This action is trespass *quare clausum*. The plaintiff produced in evidence the charter of Harris Gore, dated October 30, 1801, reciting that the grant of this territory was made by the legislature, February 25, 1782, to Elijah Gore and associates. The plaintiff then offered in evidence a deed from Elijah Gore to Elijah Gore, Jr., dated June 1, 1789, of "one whole right and share in Harris Gore, so called, in the county of Orange, and was drawn in my name to me." The defendant insists, that as the deed bears date several years anterior to the date of the charter, no such share had then been drawn to the grantor, and no such land was *in esse* as purported to be the subject of that conveyance. The recital in the charter, of the time the grant was made by the legislature, is, at least, *prima facie* evidence of the fact. And the grant by the legislature in 1782 of Harris Gore to certain proprietors, vested, at once, in them the property in such lands, as effectually as when engrossed and spread on the record. But if this were not so, if Elijah Gore had subsequently acquired his title to the land described in his

deed of warranty to Elijah Gore, Jr., such subsequently acquired title would enure to, and vest in, the grantee, by operation of law, in discharge of the covenants of the deed. This is a familiar, elementary principle. Rawle Cov. 402 ; 2 Washb. Real Prop. 710. So that Elijah Gore, Jr., was invested with the legal title to the share of Elijah Gore under the charter.

II. It is claimed that Elijah Gore, the grantor in the deed to Zenas and Polly Barney, of the 7th of February, 1821, is not the *same person* as the *grantee* in the deed from Elijah Gore to Elijah Gore, Jr., dated June 1, 1789, for the reason that Elijah Gore is described in the former deed as resident of Ellisburgh, Jefferson county, N. Y. ; while in the latter deed, his residence is set up as Halifax, Windham county, Vermont. We think that parties in successive deeds constituting a chain of title, of the same name, are presumptively the same person ; and that in this country, there is no intendment that a party in twenty years may not change his residence. Such intendment would be against all experience, and, applied to a migratory people, would work great mischief. Parties identical in *name*, are presumed to be identical in *person*, unless such presumption shall be rebutted and overcome. We discover nothing on inspection of the two deeds, to raise a doubt. The deed by Elijah Gore to Elijah Gore, Jr., in which both parties are described as of Halifax, Windham county, Vermont, is presumptively a conveyance from the father to the son. And in the deed of Elijah Gore and others to Barney and wife, the grantees are described as " heirs at law of Elijah Gore, late of Guilford," and conveying " one right of land originally drawn to Elijah Gore, *our honored father.*" The " *Elijah Gore, Jr.*" in the first, is presumed to be the son of his *grantor*, and of the grantee in the charter ; while in the latter deed, that fact is distinctly affirmed. The facts recited in the two deeds rather confirm and strengthen, than rebut, the ordinary presumption.

The questions raised in the two cases being the same, the judgments of the county court in both cases are affirmed.