GEORGE H. DAVIS ET AL. *v.* WILLIAM J. MOYLES.

October Term, 1902.

Present: TYLER, MUNSON, START, WATSON, STAFFORD, and HASELTON, JJ.

Opinion filed October 27, 1903.

*Land Titles—New York Grant—Validity—Evidence—Recitals—Private Acts—Ancient Documents—Proof of Heirship—Declarations.*

The preamble to the Constitution of 1777 refers only to lands held under original charter from New Hampshire, and does not invalidate the title to lands originally granted by the Governor of New York after that government was given jurisdiction by royal decree.

A grant from the State conveys only such title as the State then had.

A petition to the General Assembly, with the report of a legislative

committee and the indorsements of legislative officers thereon, and private Acts passed and official doings thereunder, are not evidence of a fact therein recited.

Private Acts are evidence only against the persons procuring them and, in certain cases, the State.

What is said as to the effect of recitals in *Cross* v. *Martin*, 46 Vt. 14 is *obiter dictum*.

When the recitals in an ancient document are mere narrations of past transactions of which they form no part, they are inadmissible.

A tenant in common of real estate can maintain an action of trespass in his own name and recover the whole damage for the benefit of himself and his co-tenant.

In laying the foundation for the receipt of declarations in the matters of pedigree, the relationship of the declarant must be shown by evidence independent of the declarations themselves.

Such declarations are inadmissible when made after a controversy has arisen which is capable of being litigated and is of a nature likely to bias the mind of the declarant.

TRESPASS under V. S. 5020. Plea, the general issue. Trial by Court at the March Term, 1902, Windham County, *Rowell*, C. J., presiding. Judgment for the plaintiff. The defendant excepted.

*A. E. Cudworth* and *J. L. Martin* for the plaintiff.

The grant of February 13, 1770, shows title in James Rogers and his associates. The deed from his associates to him was signed, sealed and witnessed, and it must be presumed to be in accordance with the legal requirements then existing. *Middlebury College* v. *Cheney*, 1 Vt. 336; *Brown* v. *Edson*, 23 Vt. 435.

This instrument existed before any statute required an acknowledgment; it was long acquiesced in, and was recognized by the Legislature in the proceedings relative to Rogers' estate. It was therefore admissible, and its weight was for the triers of fact to determine. *Stevens* v. *Griffith*, 3 Vt. 448.

There is no pretence that this territory, Kent, was ever in any part covered by any grant under New Hampshire authority. If it were held that all New York title was abrogated or repudiated, it rested in the power of the new State to grant the land upon its own terms and conditions. The grant to Aiken, Fletcher and Tyler in 1780 was not to them in their own right, but they were made the hand of the State to hold the property and convey it to purchasers. In 1795 the *locus* remained in their hands, held by them for the State.

If the State did not have such control of it, it was the property of James Rogers, the elder, and descended to James Rogers, the younger. It is to be presumed that James Rogers, Jr., was the son of James Rogers named in the grant of 1770. *Cross* v. *Martin,* 46 Vt. 14. At least the younger Rogers was a tenant in common with the other heirs of his father.

This title had the recognition and warrant of the State, and all the facts stated in the preamble to the Act of 1797 are established by the recitals therein. *Lord* v. *Bigelow,* 8 Vt. 445; *Cross* v. *Martin, supra.*

All the facts stated in the petition of James Rogers in 1799 were found to be true by the committee, and this finding was confirmed by the General Assembly.

From the younger Rogers, the plaintiff's chain of title is complete.

The copy of the record of the Cobb will from the town clerk's office was properly admitted. R. S. Chap. 53, sec. 13; V. S. 3008. Unless such will and the proceedings in probate thereof were so recorded, it would not be admissible. *Royce* v. *Hurd,* 24 Vt. 620.

The plaintiff may recover though other co-tenants may exist. *Bigelow* v. *Rising,* 42 Vt. 678.

*Clarke C. Fitts* for the defendant.

The preamble to the Constitution of 1777 destroys the validity of the New York grant which forms the basis of the plaintiff's title. If the grant of Kent is recognized, the charter of Londonderry is void for it is subsequent to the Constitution of 1777 and in violation of Article 9 of the Constitution.

The petition of James Rogers, wherein he is described as one of the heirs of James Rogers, one of the grantees of Kent, is not evidence of such heirship. Nor is the recital in such petition of certain proceedings of confiscation evidence of that fact.

The Act of 1795 contains several conditions precedent. Nothing in the case tends to show that they were fulfilled.

The conveyance from Aiken and his associates is inoperative. It is not sealed. Nobody in the plaintiff's chain of title was ever in possession, so no presumption of the deed's validity arises. The record must show plainly that the original instrument was sealed. *Williams* v. *Bass,* 22 Vt. 352; *McCarley* v. *County,* 58 Miss. 749; Tiedman on Real Prop. § 808.

The copy of the probate proceedings under the Cobb will was inadmissible. Due notice must appear. *Stone* v. *Peaseley,* 28 Vt. 716. The warrant to the appraisers and commissioners should be set forth and it should appear that the warrant had been returned. *Robinson* v. *Gilman,* 3 Vt. 165. The proof should be by certified copy from the office of the Register of Probate. *Abbott* v. *Pratt,* 16 Vt. 626; V. S. 2333.

WATSON, J.    This action is trespass *quare clausum fregit* for treble damages, under Vermont Statutes Sec. 5020, for

cutting timber standing and growing on land in the town of Londonderry. The trial was by the Court. The plaintiff claimed title by deed to the *locus in quo,* and in order to show it, introduced in evidence, subject to the defendant's objections and exceptions, certified copies of divers instruments and records. Hereupon the principal questions before us arise.

The plaintiffs introduced without objection a certified copy of the New York Charter of the township of Kent, now Londonderry and Windham, dated February 13, 1770, whereby the township was granted to James Rogers and twenty-two others, his associates. This charter is relied upon by the plaintiffs as the basis of their title. It is said by the defendant that the preamble to the Constitution of 1777 of Vermont so destroys the validity of the New York grants that whatever part of the plaintiffs' title is based in any way upon the grant of 1770 must fall.

A careful examination of this preamble shows that, so far as it has any bearing upon the question here, it has reference to the actions of the authorities of New York touching lands held by the inhabitants under charters granted by the Governor of New Hampshire while the territory which is now the State of Vermont was a part of the Province of New Hampshire. Indeed the preamble says that the late Lieut.-Governor of New York with others "did in violation of the tenth Command, covet those very lands." No grievances are set forth therein regarding the treatment of the inhabitants by the government of New York respecting lands originally granted by the governor of that province. And so is the history of the Grants before they became an independent State.

The lands covered by the charter in question had never been granted by the Governor of New Hampshire. The title

thereto had always been in the Crown, and a grant by the Governor of New York after that government was given jurisdiction by royal decree was good to pass title. Consequently the plaintiffs' title may legally be based upon the grant received in evidence. *Paine and Morris* v. *Smead,* 1 D. Chip. 56.

On February 20, 1770, James Rogers became the sole owner of the land thus granted by a deed of conveyance to him of that date from all of the other grantees named in said charter.

To make out their claim of title from the said James Rogers, the plaintiffs introduced as evidence subject to defendant's objection and exception in each instance among other things the following:

1. A certified copy of the charter of Londonderry, granted by the Governor, Council and General Assembly of the Representatives of the Freemen of Vermont, unto Edward Aiken, Samuel Fletcher and Joseph Tyler, a committee appointed for the purpose, dated April 20, 1780.

2. A certified copy of a petition of another James Rogers to the General Assembly of the State of Vermont, dated October 14, 1795, of the indorsements thereon by the officers of the General Assembly, and of the report thereon of the committee to which it was referred, dated Oct. 20, 1795, which said petition alleged that the petitioner's father, Col. James Rogers, was at the commencement of the then late war possessed in fee of the township of Kent, then Londonderry, and prayed that for the reasons therein stated, said committee be authorized and required to convey to the petitioner all the land in Londonderry that remained unsold and unappropriated, upon such conditions as the General Assembly should deem meet.

3. A certified copy of an act of the General Assembly, passed October 23, 1795, entitled "An Act directing certain trustees to deed the land therein mentioned," and which authorized and directed Edward Aiken, Samuel Fletcher, and Joseph Tyler, trustees, etc., "to convey by deed of quit-claim to James Rogers, for the use of himself and the other heirs of Col. James Rogers, their respective heirs and assigns forever, all the lands in the township of Londonderry, public rights excepted, which are now unconveyed by said trustees," upon certain conditions therein named.

4. A certified copy of an act of the General Assembly, passed November 6, 1797, entitled "An Act directing certain trustees to make the conveyances and transfers therein mentioned" and which recited that in 1778 the then township of Kent was confiscated as the property of James Rogers, late of Upper Canada, deceased, and was on the 20th April, 1780, granted by the name of Londonderry to Edward Aiken, Samuel Fletcher and Joseph Tyler, as trustees, to dispose of the same for the use of the State, part of which township remained in the care of said trustees, and that James Rogers, son and heir of James Rogers above mentioned, had petitioned that said land and the avails thereof be granted to him; therefore the said Aiken, Fletcher and Tyler were authorized and required to convey to James Rogers by deed of quit-claim all right and title to lands in Londonderry and Windham that said trustees then held in right and behalf of the State, and also all right and property that said trustees had as such in lands in said towns by virtue of mortgage, etc., on certain conditions therein named.

5. A certified copy of a petition of the second named James Rogers to the General Assembly, dated October 16, 1799, of the report thereon of the committee to which it was referred, dated October 21, 1799, and of the indorsements

thereon by the officers of the General Assembly, and of an Act of the General Assembly entitled "An Act directing the treasurer of this State to give up a certain bond" passed October 23, 1799.

6.   A certified copy of the record of a quit-claim deed from Edward Aiken, Samuel Fletcher and Joseph Tyler, trustees as aforesaid, to James Rogers, dated October 27. 1795, of "all and singular the land, tracts and parcels of land in the township which was formerly called Kent, late Londonderry, now Londonderry and Windham, which are not deeded or conveyed by us."

The *locus in quo* is a part of the "Hartford Tract," so called. But there was no evidence that either the plaintiffs or any of those under whom they claim title were ever in actual possession of the "Hartford Tract" or any part thereof. The defendant stands as a stranger to the title.

The grant from the State to Edward Aiken, Samuel Fletcher, and Joseph Tyler, committee, of Londonderry, could convey to the grantees only such title in the thing granted as the State had, and if it had no title thereto, the grant is absolutely void.   *Polk's Lessee* v. *Wendell,* 9 Cranch, 99, 3 L. Ed. 665; *Patterson* v. *Winn,* 11 Wheat. 388, 6 L. Ed. 500; *Rice* v. *Minn. & N. W. R. R. Co.,* 66 U. S. 358, 17 L. Ed. 147.

Since the title of the first named James Rogers under the New York charter was good and valid, no evidence was introduced tending to show subsequent title in the State, unless the certified copies of the petitions of the second named James Rogers to the General Assembly, together with the Acts of the General Assembly and of its committees, and under its authority, based thereon, and the recitals contained in said petitions and in the Acts passed by the General Assembly in consequence thereof, to the effect that the township of Kent was confiscated in 1778, as the property of the first named

James Rogers, constitute evidence of such a tendency. Were they legitimate evidence that the property was so confiscated? If they were, then the evidence tended to show the title in the State; if they were not, the case was without such evidence. Whatever force these documents have as evidence of that nature is given by the recitals therein and by the presumptions of law and fact arising thereon by reason of the acts shown to have been performed by public officers within the apparent scope of their authority. Neither the State nor its grantees were shown to have any connection with the earlier title of the first named James Rogers under the grant from the Crown in any other manner than by the recitals in these petitions and in the acts of the General Assembly, themselves. The general rule is that recitals in a deed are binding, by way of estoppel, upon the parties and those who claim under them, but they do not bind mere strangers or those who claim by title paramount the deed. Mr. Starkie, in stating this rule, says that such recitals operate by way of admission, and therefore they are not evidence against a stranger to the second deed. 1 Stark. Ev. 369. See, also, *Hall* v. *Collins,* 4 Vt. 316; *Lord* v. *Bigelow,* 8 Vt. 445; *Paine and Morris* v. *Smead,* before cited; *Carver* v. *Astor,* 4 Pet. 1, 7 L. Ed. 761; *Herron* v. *Dater,* 120 U. S. 464, 30 L. Ed. 748; *Sabariego* v. *Maverick,* 124 U. S. 261, 31 L. Ed. 430.

As illustrations of the rule, these cases are much in point. In *Paine and Morris* v. *Smead,* the action was ejectment for lands in Windsor. The township of Windsor was originally a royal grant through the Governor of New Hampshire. Evidence was introduced that after holding this grant for some years, the proprietors caused it to be surrendered into the hands of the Governor of New York for the Crown, in consequence of which that governor issued letters patent in confirmation of rights under the New Hampshire charter. The Act by

which surrender of the last named charter was made, was not produced in evidence, but the New York charter recited that the other charter was surrendered. The plaintiffs claimed under the New York grant, and the defendant stood in the place of his father who was a proprietor of several rights under the New Hampshire grant. The evidence showed that the father was one of the proprietors who caused that grant to be surrendered for the New York grant, and that he accepted lands under the latter in full for his claim under the former. It was held that the New York grant issued after the New Hampshire grant had been surrendered was valid, and that the recital therein was *prima facie* evidence of such surrender. In *Lord* v. *Bigelow,* the action was ejectment for certain lands in the township of Wheelock. The plaintiff was President of Dartmouth College and he brought suit as President of Moor's Charity School and successor of John Wheelock, as a corporation sole. The Legislature of this State, in 1808, passed a declaratory and confirming statute, in which they recognize and declare that on the 14th June, 1785, a grant was made under the authority of the State, and a charter issued to John Wheelock, President of Moor's Charity School, and to the trustees of Dartmouth College, of a township of land, one moiety thereof to the said president and his successors in office. The defendant claimed under title through several mesne conveyances from John Wheelock, President, etc. The original grant was not produced. It was insisted that the statute should not have been admitted in evidence without producing the charter. The Court, holding the evidence admissible, said that as the preamble or recital respects those parties, it was evidence of the grant or charter mentioned therein; and that no principle was better established than that the recital of a deed in a subsequent deed is evidence of the former against a party to the latter, though it may not

be against a stranger or against one who derives title from the grantor before the deed which contains the recital. In *Herron* v. *Dater,* both parties claimed under the Common-wealth of Pennsylvania. The defendant in error stood upon the legal title of one Thomas Ruston established by a warrant and survey perfected February 23, 1795. One assignment of error was based upon the refusal of the trial court to admit in evidence the certified copy of a patent from the Com-monwealth to one Peter Grahl, dated April 12, 1797, with a recital therein of the fact that Lewis Walker, by deed dated November 27, 1793, had conveyed the tract of land in ques-tion to Peter Grahl. The Court, speaking through Mr. Jus-tice MATTHEWS, said that the patentee was not connected with the title under the warrant and survey, otherwise than by the recital contained in the patent itself, that the tract had been previously conveyed to him by Lewis Walker. Clearly, that recital was not evidence against the plaintiffs, for if the patent could not take effect against them without it, it could not give any effect to that recital. In *Sabariego* v. *Maverick,* the court below excluded evidence offered by the plaintiffs by way of documents and recitals therein upon which they relied with the aid of presumptions supplied by law, to establish the truth of the fact recited and on the basis of which alone the pro-ceedings to which they related could be lawful, including the principal fact of a lawful confiscation of an estate of one Miguel Losoya to the tract of land under consideration, by a grant from the King of Spain. After reviewing authorities, the Court speaking again by Mr. Justice MATTHEWS, said: "By all these cases the question was whether the documents, with the recitals therein, and the presumption of law and fact arising thereon, shown to have been executed by officers of the government, within the apparent scope of their authority, were sufficient in the first instance to show that the title of

the government assumed by them to exist passed by the conveyance which undertook to transfer it.   In no case, however, have they been held sufficient, when the fact in issue was whether the government at that time had any title to convey, to establish the fact in dispute, as against parties claiming a pre-existing, adverse and paramount title in themselves.   All that can be reasonably or lawfully claimed as the effect of such documents of title, is that they passed such estate, and such estate only, as the government itself, in whose name and on whose behalf the official acts appear to have been done, had at the time,' but not to conclude the fact that the estate conveyed was lawfully vested in the grantor at the time of the grant."   The Court further said, "notwithstanding all these recitals, and the inferences and implications that are sought to be drawn from them, it still remains that the alleged confiscation of the property of Miguel Losoya, if it ever took place, could have been lawfully effected only by means of a formal judicial proceeding, which must be primarily proved by the official record of the transaction or a duly certified copy thereof; and, secondarily, in case of its loss, by proof of its previous existence and of its contents.   The certificates of other officers referring to it only incidentally and collaterally, although as the basis of their own official action, are not legal proof of the fact itself."

In *United States* v. *Ross,* 92 U. S. 281, 23 L. Ed. 707, the Court by Mr. Justice STRONG, in speaking of the maxim that all acts are presumed to have been rightly and regularly done, said:   "The presumption that public officers have done their duty, like the presumption of innocence, is undoubtedly a legal presumption; but it does not supply proof of a substantive fact.   Best, in his Treatise on Ev., sec. 300, says: 'The true principle intended to be asserted by the rule seems to be, that there is a general disposition in courts of justice to

uphold judicial and other acts rather than to render them in-
operative; and with this view, where there is general evidence
of acts having been legally and regularly done, to dispense
with proof of circumstances, strictly speaking, essential to the
validity of those acts, and by which they were probably accom-
panied in most instances, although in others the assumption
may rest on grounds of public policy.' Nowhere is the pre-
sumption held to be a substitute for proof of an independent
and material fact."

But there is another reason why the recitals under con-
sideration are not evidence of the fact recited. The petitions
containing such recital were the actions of the second named
James Rogers and, the Acts of the General Assembly based
thereon were private acts procured by him and for his benefit.
The recitals of public acts are regarded as evidence of the
facts recited, for every subject is, in contemplation of law,
privy to the making of such acts.    1 Stark. Ev. 164; *R. v.
Sutton,* 4 Maule & Sel. 532. The converse of the reason for
this rule is the maxim, applicable to the law of evidence, that
a transaction between two parties ought not to operate to the
disadvantage of a third.    From this it follows that recitals
in a private act are not evidence except against the persons who
procured the enactment, or perhaps in certain cases, the State.
Endlich Interpretation of Statutes, sec. 375; *Branson* v.
*Wirth,* 17 Wall. 32, 21 L. Ed. 566; *Kinkead* v. *United States,*
150 U. S. 483, 3-7L. Ed. 1152; *Elmondorff* v. *Carmichael,* 3
Littell, 472; *Polini* v. *Gray,* L. R. 12 Ch. D. 411; *State* v.
*Beard,* 1 Ind. 460. Nor is this rule affected in the case before
us by the fact that the petitions for such enactments were
referred to a committee by the General Assembly, and that
such committee made its reports thereon affirming the truth of
the allegations in the petitions, for by the same maxim a per-

son cannot be affected by any evidence, decree or judgment to which he was not actually, or in consideration of law, privy. Broom's Leg. Max. 954; *McKinnon* v. *Bliss,* 21 N. Y. 206.

The plaintiffs rely on *Lord* v. *Bigelow,* and on *Cross* v. *Martin,* 46 Vt. 14, as sustaining their contention that the facts stated in the preamble to the Act of November 6, 1797, are established by the recitals therein.    Reference has already been made to *Lord* v. *Bigelow,* and, as seen, it in effect states the general rule as it is here stated, and that case was within it. In *Cross* v. *Martin,* to show title in himself,  the plaintiff introduced without objection a certified copy of the charter of Harris Gore, dated October 30, 1801, which recited that the same territory was granted by an Act of the General Assembly, passed February 25, 1782, to Elijah Gore and associates. The plaintiff introduced other evidence both oral and documentary in making out his case, some of which was received without objection and some under exception by defendant. The Court found from the evidence title to the lots in question in the plaintiff, to which defendant excepted.    Immediately following this exception and as a part of the same paragraph, the original bill of exceptions,—which we have examined,— states: "The same questions were raised, and same objections were made by defendant's counsel to the sufficiency of proof to show title in plaintiff after the evidence was closed, as was raised and made on the introduction of the evidence, and no others."   This shows that the question of the force of the recitals in the charter of 1801, as evidence, was not raised, and that what is said thereon in the opinion is *obiter dictum.*

Nor does the fact that the recitals in question are contained in ancient documents make them evidence of the facts recited; for they are mere narrations of a past transaction of which they formed no part.   Under the rules governing

the admissibility of ancient documents as such it is requisite·
that they be a part of the transaction to which they relate.
1 Greenl. Ev., sec. 144.

It is urged by the plaintiffs, however, that if the State·
had no title to the property to pass by its grant, the first
named James Rogers continued to be the owner, and at his.
death the property descended to his heirs, of whom it is con-
tended the second named James Rogers was one. If the lat-
ter was such heir, and together with his co-heirs thus inher-
ited the property, then the plaintiffs as grantees of his
undivided part of the land can maintain an action in
their own names against a stranger to the title for trespass
thereon and recover the whole damage to the property for
the benefit of themselves and co-tenants. *Bigelow* v. *Rising,*
42 Vt. 678; *Hibbard* v. *Foster,* 24 Vt. 542.

The question then arises whether the recitals in the peti-
tions to the effect that the first named James Rogers was the
petitioner's father are evidence tending so to show, for if they
are not, there is no evidence of the heirship contended for, in
the case. The declarations, oral or written, of deceased per-
sons who were related to the family in question by blood or
marriage may be given in evidence in matters of pedigree
when a proper foundation is laid therefor. In laying the
foundation, the relationship of the declarant with the family
must be shown by evidence independent of the declarations
themselves. No evidence of this fact was introduced, hence
the declarations contained in the recitals were not proper evi-
dence. *Fulkerson* v. *Holmes,* 117 U. S. 380, 29 L. Ed. 915.
The cases where declarations of deceased persons in relation
to boundary lines and monuments are received in evidence are
analogous in principle. There before such evidence can be
received, the declarant's knowledge at the time he spoke must

be proved by evidence *dehors* the declarations. *Hadley* v. *Howe*, 46 Vt. 142; *Miller* v. *Wood*, 44 Vt. 378.

In addition to this, it must appear that the declarations were *ante litem motam;* for they are admitted "upon the principle," said Lord ELDON, "that they are the natural effusions of a party, who must know the truth, and who speaks upon an occasion when his mind stands in an even position, without any temptation to exceed or fall short of the truth." *Whitlock* v. *Baker*, 13 Ves. 514, 11 Eng. Rul. Cas. 309. In the case before us, the declarations were made by the second named James Rogers in petitions to the General Assembly for the purpose of having it act thereon in passing an Act directing that the lands before owned by the alleged ancestor but then claimed by the State, be conveyed to the petitioner for the benefit of himself and "other heirs," not named. His petition of October 14, 1795, alleges "that the estate of your petitioner's father not being confiscated by law of this State, the Commissioners of American Claims, appointed by the Court of Great Britain 'to inquire into the losses and services of all persons who suffered in the rights, properties and possessions during the late war in America in consequence of their loyalty to the Crown and Government of Great Britain,' would not allow compensation for the lands in Londonderry, except such parts thereof as were actually sold previous to the treaty of peace betwixt his Britannic Majesty and the United States of America, the said Commissioners alleging that agreeable to said treaty all property belonging to loyalists' estates ought to be restored which had not been legally confiscated or absolutely sold." To constitute *lis mota* it is not necessary that a suit be pending. It is sufficient to render the declarations inadmissible on the ground of *lis mota* if at the time they were made a controversy had arisen capable of being litigated, which was of a nature likely to bias the mind of the

declarant.   It appears from the above allegations that a con-
troversy had been had upon the matter of the legal status of
the lands in question before this petition was preferred to the
General Assembly, and that failing to get an allowance by the
Commissioners of American Claims as compensation for them,
the declarant petitioned the General Assembly for the lands
themselves which remained unsold and unappropriated..  The
property rights he was thus seeking were large and his interest
was great.    Under the rules of law, when such a controversy
has arisen, it is supposed to create a bias in the mind of the
declarant and his declarations are inadmissible.  *Butler* v.
*Viscount Mountgarret,* 7 H. L. Cas. 633, 11 Eng. Rul. Cas.
335; *Monkton* v. *Attorney General,* 2 Russ. & Myl. 147; *In
Re Hurlburt's Estate,* 68 Vt. 366.

We hold, therefore, that the certified copies of the peti-
tions to the General Assembly and the acts of the General
Assembly thereon, and the doings of the public officers under
the authority of the General Assembly in consequence thereof,
had no tendency to show that the lands of the first named
James Rogers had been confiscated by the State.   Also that
the recitals in the petitions were not proper evidence that the
second named James Rogers was heir at law of the James
Rogers first named.   It follows that these copies were not
proper evidence for any purpose, and that they together with
the Vermont Charter should have been excluded.   This being
so, the plaintiffs' record title fails, and they had no construc-
tive possession of the *locus in quo* at the time of the alleged
trespass.

The other exceptions are not considered.

*Judgment reversed and cause remanded.*